675 P.2d 826

Karl STEINER, Vernal Hawkes, George Hipwell, Jay Hulet, Wes Hooley, Wayne Draper, Pete Nielsen, Clyde Greenwell, Richard Blincoe, S. Leon Pickett, Carl Boyd, William Beck, Dale Depeu, Walter Shouse, Harold Bulcher, Ray Freymiller, Melvin Garrard, Melvin Call, John Adams, Plaintiffs, Respondents & Cross-Appellants,

v.

The AMALGAMATED SUGAR COMPANY, a corporation, Defendant, Appellant & Cross-Respondent.

No. 13569.

Court of Appeals of Idaho.

Jan. 24, 1984.

Edward L. Benoit, of Benoit & Alexander, Twin Falls, Kent H. Murdock (argued) and Stephen H. Anderson, of Ray, Quinney & Nebeker, Salt Lake City, Utah, for defendant, appellant and cross-respondent.

Roger D. Ling (argued), of Ling, Nielsen & Robinson, Rupert, H. William Furchner, of Furchner & Hennebold, Blackfoot, Stephen B. Fonda, of Stunz, Fonda & Pratt, Nyssa, Or., E.J. Skeen, of Skeen & Skeen, Salt Lake City, Utah, for plaintiffs-respondents and cross-appellants.

WALTERS, Chief Judge.

This case focuses upon the provision of a standard contract used by Amalgamated Sugar Company to purchase sugar beets from the plaintiffs (hereinafter, the growers). Amalgamated has appealed a district court judgment holding that this provision

does not allow Amalgamated to deduct, from the price it paid the growers, legal fees incurred by Amalgamated in defending and settling complaints for alleged violations of antitrust law. We affirm.

The growers cross-appeal, arguing that the district court should have awarded attorney fees to them pursuant to I.C. § 12–120(2). The trial court declined to award such fees because it believed that the limitation of awards of attorney fees contained in I.C. § 12–120(1) also applied to subsection (2). Subsection (1) limits awards of attorney fees to cases where the amount pleaded in the complaint or counterclaim does not exceed $2,500. We hold that the limitation of subsection (1) does not apply to subsection (2) and reverse the district court's decision in that regard. We also award attorney fees on appeal, to the growers.

I

The plaintiffs are some of the sugar beet growers who, for many years, have contracted on an annual basis to sell their sugar beets to Amalgamated. Amalgamated and the growers have used a contract which has not changed substantially in several decades. To allow Amalgamated and the growers to share in the market risks of selling sugar, the contract provided a formula for determining the price which sugar beet growers would be paid for their beets. That formula took into account the "gross sales price" at which Amalgamated was able to sell its sugar, the expenses of selling the sugar, and the sugar content of each grower's crop in determining net return, which was shared by Amalgamated and the growers. In particular, the contract provided that "[t]he net return ... shall be determined by deducting from gross sales price of sugar, [sic] all such charges and expenditures as are regularly and customarily deducted from gross sales price of sugar, in accordance with the Company's system of accounting." According to the testimony of several witnesses at trial, the charges and expenditures which were regularly and customarily deducted from the gross sales price were "marketing-related" or "selling" expenses.

In 1971, a civil action, which alleged that Amalgamated had violated federal antitrust laws, was filed. This was the first of a wave of antitrust actions in which virtually every sugar producer in the industry was accused of antitrust violations. Subsequently Amalgamated was named as a defendant in a host of other civil actions and in a criminal indictment filed by the federal government, all of which alleged similar violations. Since then, Amalgamated has spent over one million dollars in legal fees to defend against the actions. Most of the civil actions have been settled, and Amalgamated pled nolo contendere to the criminal indictment. Amalgamated has consistently denied any wrongdoing throughout all of the antitrust litigation.

Beginning in 1970, Amalgamated had deducted from the gross sales price the amount of legal fees which it incurred in defending and settling the antitrust complaints. This reduced the net return in which the growers shared. Some of the growers objected each year to Amalgamated's deduction of these fees, and filed this lawsuit in 1972. After trial, the court found that "a regular and customary deduction under Amalgamated's system of accounting is one connected with and in the furtherance of marketing sugar." The court also found that "considering [the litigation fees] in the concept urged [by Amalgamated], namely, as mainly in defense of the historic marketing system, they take on a hue of furthering the marketing of sugar; however that is a futuristic coloring." It concluded that the fees were not deductible because "the growers did not contemplate, nor did they expressly or impliedly agree" to deduct fees incurred in defending against allegations of antitrust violations or attacks on the marketing system.

Amalgamated contends that the district court misinterpreted the contract. It argues that "the contract does not require the contemplation or agreement of the growers as a condition of deductibility of specific items" because the parties agreed

to a system of accounting which provides for deduction of the fees in question. It asserts that the parties did not negotiate the deductibility of specific items, but rather relied on Amalgamated's system of accounting and that the court cannot alter the contract to require such negotiation. Amalgamated also challenges the finding that "a regular and customary deduction ... is one connected with and in furtherance of marketing sugar." It argues that this is an alteration of its system of accounting which is impermissible. Alternatively, Amalgamated asserts that the legal fees are deductible even under this altered test. Finally, Amalgamated discerns an underlying premise, in the district court's decision, that the fees involved here do not relate to marketing because they are in defense of alleged wrongdoing. It argues that such a premise contradicts the district court's own statement that no inference of wrongdoing was to be drawn from the allegations of antitrust law violations.

Insofar as the contract provision in question is concerned, we agree that that provision does not require contemplation of specific items, or agreement as to the deductibility of specific items. The parties agreed to apply a system of accounting which Amalgamated's officials testified resulted in the deduction of "marketing-related" or "selling" expenses. Any expenses which are properly included in this category are deductible, under the contract, in determining net return to the growers. However, expenses which are not marketing-related are not deductible under this provision. No other contract provision affects the determination of expenses to be deducted in computing net return.

■ The meaning and legal effect of a clear and unambiguous contract are questions of law to be determined by the court. *Bennett v. Bliss*, 103 Idaho 358, 647 P.2d 814 (Ct.App.1982). The contract at issue here incorporates Amalgamated's system of accounting to determine which expenditures are "regularly and customarily deducted" in computing net return. The de-

termination of what is Amalgamated's system of accounting is a question of fact, for the court as the trier of fact. A finding of fact made by a court will not be overturned on appeal if it is supported by substantial, competent evidence. *Rasmussen v. Martin*, 104 Idaho 401, 659 P.2d 155 (Ct.App. 1983). The determination of whether the legal fees at issue here are properly deducted in computing net return, according to Amalgamated's system of accounting, as found by the court, is a mixed question of fact and law.

■ The trial court found that "a regular and customary deduction under Amalgamated's system of accounting is one connected with and in the furtherance of marketing sugar." That finding is based on the testimony of Amalgamated's witnesses that Amalgamated's system of accounting resulted in the deduction of "marketing-related" or "selling" expenses. This method of determining net return was intended to allow Amalgamated and its growers to share in the *market risks* of selling sugar. Substantial, competent evidence supports this finding. We will not disturb it on appeal. *Rasmussen v. Martin, supra.*

■ From this finding, the trial court concluded that the growers neither contemplated nor expressly or impliedly agreed to the deduction of the legal fees at issue. From this conclusion, we infer that the trial court concluded that the legal fees were not a regular and customary deduction within the meaning of the contractual provision at issue or any other contractual provision. We believe that the express conclusion of the trial court, and the conclusions which we infer, are correct and are supported by the trial court's findings of fact. We affirm these conclusions.

Amalgamated challenges the district court's finding that "a regular and customary deduction ... is one connected with and in furtherance of marketing sugar," arguing that this is an impermissible alteration of its system of accounting. However, we view this finding as defining which expenses, of those incurred after the production phase of operations, are in fact

related to marketing. We believe that it defines, rather than alters, Amalgamated's system of accounting. This finding is supported by substantial, competent evidence and we will not disturb it on appeal. *Rasmussen v. Martin, supra.*

■ Finally we consider Amalgamated's argument that the district court "must have" drawn an inference of wrongdoing by Amalgamated in finding that the legal fees are not marketing-related, in spite of that court's statement that no such inference was drawn. We view this contention as nothing more than speculation by Amalgamated. We will not presume that the trial court committed error. *Foremost Insurance Co. v. Putzier,* 102 Idaho 138, 627 P.2d 317 (1981). We will not consider this contention further.

## II

■ On its cross-appeal, the growers argue that the trial court should have awarded attorney fees pursuant to I.C. § 12–120(2). The trial court declined to award attorney fees because the amount pleaded in the complaint exceeded the $2,500 limit provided in I.C. § 12–120(1). The trial court believed that that limit applied to both subsections of I.C. § 12–120. The Idaho Supreme Court, however, has indicated otherwise. In *Torix v. Allred,* 100 Idaho 905, 606 P.2d 1334 (1980), our Supreme Court approved an award of attorney fees, made pursuant to I.C. § 12–120(2), on a counterclaim for over $15,000. In *McKee Bros., Ltd. v. Mesa Equipment, Inc.,* 102 Idaho 202, 628 P.2d 1036 (1981), that court approved an award of attorney fees, on appeal, pursuant to I.C. § 12–120(2), where McKee Bros. had brought a suit to recover over $5,000. We therefore reverse the denial of an award of attorney fees to the growers. Recognizing that its determination regarding I.C. § 12–120 might be incorrect, the trial court found that if attorney fees should be awarded then $40,000 would be a reasonable award. Amalgamated has not contested that finding on this appeal. Upon remittitur, we direct the trial court to modify its judgment by awarding to the growers $40,000 in attorney fees.

## III

■ The growers also seek an award of attorney fees pursuant to I.C. § 12–120(2) on this appeal. That section mandates that "the prevailing party shall be allowed a reasonable attorney fee." As noted, our Supreme Court has approved awarding attorney fees on appeal under this section. *See McKee Bros., Ltd., supra.* Therefore, we award attorney fees to the growers on this appeal, in an amount to be determined as provided in I.A.R. 41(d).

In summary, we affirm the judgment of the district court, modified to include attorney fees to the growers in the sum of $40,000. Attorney fees and costs on appeal to the plaintiffs-respondents and cross-appellants.

SWANSTROM, J., concurs.

BURNETT, Judge, specially concurring.

I join in holding that Amalgamated improperly deducted antitrust legal expenses from the compensation owed to sugar beet growers under the standard contract. Because my views are not fully reflected in the Court's opinion, I will outline them briefly here.

At the outset I acknowledge that these deductions, in concept, appeal to an intuitive sense of fairness. The contract provides for Amalgamated and its growers to share certain costs and benefits of marketing sugar. If it were shown that the growers actually had shared benefits derived from the marketing practices challenged in the antitrust litigation, it would not be unjust to require the growers to share the legal costs occasioned by those practices. But the record contains no such showing. Neither does the contract authorize Amalgamated to make all deductions that would be just, nor even to deduct every expense related to marketing sugar. Rather, the contract allows only "regular and customary" deductions.

The company's controller testified at trial that the phrase "regular and customary" refers to "an accounting concept of consistency .... that items are handled, reported, consistently from year to year." He further testified that if the company encountered a type of expense for which there was no prior history, it would be treated as deductible under the contract only if the parties specifically so agreed or if a generally accepted accounting principle covered the expense. The record discloses that antitrust litigation expenses first arose in 1957, when a relatively small cost was incurred. There is no proof of any agreement concerning deduction of that item. The company simply included it in a "miscellaneous" category of its "chart of accounts," and unilaterally deducted it. After 1957, the company continued to maintain no "chart of accounts" item for antitrust legal expense nor even for attorney fees in general, which remained "miscellaneous."

In the instant dispute, the question of antitrust litigation expenses has arisen again. Obviously, the parties have reached no agreement regarding deduction of this item. Although the company asserts that such expenses are regularly and customarily deducted, in fact it has made no deduction for sums paid in settlement of the antitrust claims, and it has based its attorney fee deduction upon 80%—rather than 100%—of the fees incurred for representing the company in the antitrust litigation. The company now explains its failure to deduct any of the settlements, or all of the attorney fees, as a conciliatory gesture toward the growers. Conciliation never is to be condemned. However, the question here is not one of good faith. It is whether the company has shown, on this record, that deductions of antitrust litigation expenses are regular and customary. The

district court found that they are not, and I must agree. The record reveals instead a series of ad hoc, albeit perhaps well-intentioned, decisions by the company concerning such expenses. These decisions do not meet the contract test of regular and customary deductions.

Alternatively, the company has contended that the expenses are covered by a general accounting practice of identifying marketing expenses and distinguishing them from other expenses. However, as the district court found, the company failed to establish a nexus between the legal expenses deducted and the marketing of sugar. The record discloses no evidence that the antitrust litigation interfered with ongoing sales of sugar to the company's customers. Neither did the company undertake to show that the litigation had diminished, or had threatened to diminish, the prices received for the company's sugar. Indeed, the company maintained in this case the same position it had urged in the antitrust litigation—that past sugar marketing practices had not increased sugar prices above competitive market levels. Absent any showing that the antitrust litigation was related to the level of sugar sales or to the prices received for such sales, the company furnished the district court no basis to find that the legal expenses of defending the antitrust claims represented a cost of selling sugar. Upon this record, I believe the district court was constrained to disallow deduction of the legal expenses.