678 P.2d 80

**DeWILS INTERIORS, INC., a corporation, Plaintiff-Respondent,**

v.

**Richard G. DINES and Sherry A. Dines, husband and wife, Defendants-Appellants.**

**No. 14073.**

Court of Appeals of Idaho.

Feb. 24, 1984.

Petition for Review Denied May 2, 1984.

---

2. Golden Condor has been represented on appeal by counsel other than its attorney at trial.

Roderick B. Wood and Daniel T. Eismann, Richard B. Eismann Law Offices, Homedale, for defendants-appellants. Roderick B. Wood argued the appeal; Richard B. Eismann briefed the petitions for rehearing.

Donald E. Downen, Gigray, Miller, Downen & Weston, Caldwell, for plaintiff-respondent.

## ON DENIAL OF SECOND PETITION FOR REHEARING*

BURNETT, Judge.

This appeal presents issues concerning attorney fees. We are asked to decide whether the trial court made an adequate fee award to the prevailing parties in a contract action, and whether additional fees should be awarded to them on appeal. For reasons explained below, we vacate the tri-

---

* This opinion supersedes our prior opinions issued August 23, 1983, and November 17, 1983, which are hereby withdrawn.

al court's fee award and remand for further consideration. We decline to award more attorney fees on appeal.

The seeds of this controversy were sown when the appellants, Richard and Sherry Dines, engaged a contractor to build a house. The contractor obtained certain kitchen cabinets, appliances and a vanity from the respondent, DeWils Interiors. These items were delivered and installed, but the contractor later abandoned the job without fully paying DeWils. A balance of $4,443.84 remained outstanding. Although DeWils sued the contractor and obtained a judgment against him, the judgment apparently proved to be uncollectible. DeWils also filed a materialman's lien on appellants' property and sought either to foreclose the lien or to recover the unpaid balance from appellants on a contract theory.

The district court held, in a partial summary judgment, that DeWils' lien contained a fatal defect and was void. The case went to trial on the contract theory, but a jury returned a verdict against DeWils. Judgment was entered accordingly. As the prevailing parties, appellants requested awards of costs and attorney fees in the amounts of $957.90 and $11,389.37, respectively. DeWils objected. The district court eventually awarded appellants $835.00 in costs and $1,500.00 in attorney fees. This appeal followed. DeWils did not cross-appeal the underlying judgment.

Regarding the question of costs, DeWils has characterized the district court's award of $835.00 as a possible clerical error and has conceded that the proper amount should have been $957.90, as appellants originally requested.[1] Accordingly, the district court is directed on remand to enter the appropriate corrective order.

We next turn to the central issue of attorney fees. This issue arises in two contexts—attorney fees at trial and attorney fees on appeal.

### Attorney Fees at Trial

■ Appellants' request for fees at trial was grounded in both I.C. §§ 12–120 and 12–121. However, the district court did not recite, in its order granting attorney fees, any statutory basis for the award. Further, the court made no finding that DeWils' action had been brought or pursued "frivolously, unreasonably or without foundation." Such a finding would have been required to award fees under § 12–121. See I.R.C.P. 54(e)(1)–(2). Therefore, we presume that the court based its award upon § 12–120.

■ Idaho Code § 12–120(1) relates only to civil actions where the amount pleaded is $2,500 or less. It is not applicable here. In contrast, § 12–120(2) contains no limit upon the amount in controversy. Rather, it contains a subject matter limitation. It is restricted to a "civil action to recover on an open account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise. . . ." Because this case falls within one or more of the enumerated categories, § 12–120(2) is applicable here. It provides that "the prevailing party shall be allowed a reasonable attorney fee to be set by the court."

Rule 54(e)(3) lists the factors which the district court "shall consider . . . in determining the amount of such fees." One factor is the "time and labor required." The district court may also consider "[a]ny other factor . . . appropriate in the particular case." But the court may not focus upon such "other" factors to the exclusion of the "time and labor" and the remaining factors listed in the rule. *Logosz v. Childers*, 105 Idaho 173, 667 P.2d 276 (Ct.App. 1983).

■ In the present case, the district court granted a relatively small fraction of the fee amount requested. The request had been supported by a detailed affidavit of time and labor expended by appellants' counsel. In its order, the court generally paraphrased several factors contained in Rule 54(e)(3), and suggested that more attorneys had worked on the case than were necessary. Although we intimate no view

---

1. It appears from the record that appellants did not move the district court to correct the cost award before filing this appeal. We encourage litigants to resolve matters of this nature at the trial court level.

concerning the factual basis of these comments, their subject matter was appropriate to the rule. However, the court further stated that DeWils should not, "in effect, be penalized for following the advice of legal counsel in pursuing collection of this account against both the contractor and the [appellants], who in fact received and have had the use and benefit of [DeWils'] materials." This language contains "other" factors which the court apparently deemed appropriate to consider in determining the amount of attorney fees awarded.

Insofar as this language signifies that any fee award to appellants should be determined with an equitable view toward the outcome of the underlying transaction, we believe the district court erred. DeWils' right to recover from appellants was extinguished by judgment against its complaint. An attorney fee award is not the proper place to give indirect relief from an adverse judgment. The arguably harsh effect of a judgment is not an appropriate "other" factor to consider in fixing attorney fees under rule 54(e)(3). *See Bank of Idaho v. Christopherson*, reported as *Bank of Idaho v. Colley*, 103 Idaho 320, 647 P.2d 776 (Ct.App.1982).

■ Moreover, presuming that the fee award was grounded in I.C. § 12–120(2), we believe it was improper to characterize the award as a penalty. The statute exhibits no punitive purpose. Rather, it treats reasonable attorney fees as a cost of using the court system to resolve disputes in specified types of commercial transactions; and it allocates this cost between the parties. Because the allocation turns solely upon a determination of the prevailing party, the statute is facially neutral. It identifies no favored category of litigant to be rewarded, nor disfavored category to be penalized.

Of course, the allocation, when made, produces a benefit for the prevailing party and a correlative burden for the nonprevailing party. But the unavoidable fact that one party's benefit is another's burden does not necessarily mean that the statute is punitive. Even where an attorney fee

statute overtly creates a favored class of litigant—e.g., an insurance claimant under I.C. § 41–1839, or a workmen's compensation claimant under I.C. § 72–804 (formerly § 72–611)—our Supreme Court has held that a fee award does not represent a penalty. *Mayo v. Safeway Stores, Inc.*, 93 Idaho 161, 457 P.2d 400 (1969), (construing § 72–611); *Halliday v. Farmers Insurance Exchange*, 89 Idaho 293, 301, 404 P.2d 634, 639 (1965) (construing § 41–1839). *A fortiori*, we deem it clear that § 12–120(2), which creates no favored class, does not impose a penalty. The determination of a reasonable fee under this statute should not be colored by characterizing the award as a penalty.

■ Of course, a district court is vested with discretion in determining the amount of attorney fees to award. However, we cannot uphold an exercise of discretion which reflects erroneous assumptions by the court. *Barnes v. Hinton*, 103 Idaho 619, 651 P.2d 553 (Ct.App.1982). Here the district court's determination of the fee amount was coupled with an observation that the requested award was, in effect, a penalty. The determination also may have reflected an assumption that the impact of the underlying judgment could be tempered in fixing the amount awarded. As in *Barnes*, we are constrained to vacate the award and to remand the case so that the court can make an appropriate determination." *Id.* at 622, 651 P.2d at 556. Upon remand, the district court is directed to specify the statutory authority under which fees are awarded, and to give due consideration to all appropriate factors under I.R.C.P. 54(e)(3).

### Attorney Fees on Appeal

■ Finally, we turn to appellants' request for attorney fees on appeal. Our treatment of this issue has prompted two petitions for rehearing. The initial opinion held that attorney fees could not be granted on appeal because we merely vacated the district court's fee award, remanding the case for further consideration. No "prevailing party" was identified on appeal.

However, in a brief supporting the first petition for rehearing, appellants' counsel correctly reminded us that we could direct the district court to consider fees incurred on appeal if appellants ultimately prevailed on remand. *See Paloukos v. Intermountain Chevrolet Co.*, 99 Idaho 740, 588 P.2d 939 (1978). Consequently, we were faced squarely with the task of deciding whether an award of attorney fees on appeal would be appropriate where the sole focus of the appeal is the asserted inadequacy of an attorney fee award at trial. In a modified opinion, we held that such an award on appeal is permissible under I.C. § 12–121, but is not governed by the mandatory provisions of § 12–120(2). Appellants have challenged this holding in their second ("amended") petition for rehearing.

Before examining the issue again, we note that DeWils has challenged the appellants' right to file a second petition for rehearing. However, the petition is directed at an issue, attorney fees on appeal, substantially developed in our modified opinion. Consequently, we deem the petition to be proper. *See* I.A.R. 42(a). We further note that the issue is narrow and has been briefed on both sides. We believe the concerns raised by the petition should be addressed now, without imposing upon the parties the additional delay and expense of reargument. It is clear from the record that the legal costs in this case already far exceed the amount originally in controversy.

### A

Our primary focus remains upon I.C. § 12–120(2). As we have noted, this statute allocates attorney fees as an expense of settling certain commercial disputes through the judicial process. In apparent recognition of this purpose, the Idaho Supreme Court has held the statute to authorize awards of attorney fees on appeal in cases where issues related to the underlying commercial transaction were presented on appeal. *E.g., Meredith Corp. v. Design & Lithography Center*, 101 Idaho 391, 614 P.2d 414 (1980); *Torix v. Allred*, 100 Idaho 905, 606 P.2d 1334 (1980); *Paloukos v. Intermountain Chevrolet Co., supra.* Our court has done the same. *Steiner v. Amalgamated Sugar Co.*, 106 Idaho 111, 675 P.2d 826 (Ct.App.1984). However, the appeal in this case does not fit that mold. This appeal does not relate to the underlying commercial transaction; rather, the sole issue is the adequacy of the attorney fee award following trial.

Section 12–120(2) does not expressly provide for a mandatory attorney fee award in an appeal which is concerned only with the amount of fees awarded below, rather than with the underlying commercial transaction. Thus, the question before us is whether the statute should be extended by judicial construction to embrace such an appeal. This question yields no easy answer.

Appellants' counsel, in a well-written brief, has argued that § 12–120(2), once triggered by a dispute over an enumerated commercial transaction, automatically carries over to appellate review of the amount of attorney fees awarded by the trial court. This argument is intuitively attractive. We surmise that many attorneys and judges simply have assumed it to be true. But the argument, when closely examined, is grounded upon a doubtful hypothesis. The hypothesis is that if the statute mandates a "reasonable" attorney fee award for litigating a commercial dispute, then it also mandates a second fee award for appellate review of the reasonableness of the first award. This conclusion does not necessarily follow from its premise. The hypothesis misapprehends the function of the statute. That function, described above, is to allocate attorney fees as an expense of resolving certain commercial disputes through the courts. It is not to allocate fees for resolving appellate disputes over fee amounts.

It might be argued that even if the statute is directed at allocating fees for resolving commercial disputes, the award of additional fees in appeals concerning fee amounts would be consistent with this purpose. We disagree. If a nonprevailing

party, who successfully challenged an attorney fee award as excessive, received a mandatory fee award on appeal, the party who prevailed at trial on the commercial dispute would find his award not only reduced but offset—and perhaps exceeded—by the award made on appeal. The allocation of legal expense for resolving the commercial dispute would be defeated. Conversely, if the prevailing party at trial successfully appealed an award as inadequate, the losing party would find himself paying not only the legal expense of resolving the commercial dispute, but also the legal expense of an appeal not concerned with the underlying transaction.

Additional permutations could be constructed from the variables of prevailing and losing parties, inadequate or excessive fees, and awards at trial or on appeal. But the result common to all scenarios is that if an award of attorney fees is mandated to a party who prevails in an appeal taken solely to challenge the amount of fees awarded below, the allocative purpose of I.C. § 12–120(2) is distorted. The fee award for resolving the commercial dispute is either squeezed by an offsetting award, or stretched by an additional award, in appellate proceedings unrelated to the merits of the commercial dispute.

Such distortion not only interferes with the allocative function of § 12–120(2); it also may erode the statute's fairness. Section 12–120(2) produces a harsh result for the losing party in litigation over a commercial dispute. This party suffers not only the outcome of the dispute and his own legal expense, but also is burdened with costs and attorney fees awarded to the other side. However, this result is fair if the benefits and costs of litigation are identified in advance and the parties can guide their decisions accordingly. The parties are abjured by the statute to evaluate carefully the merits of their claims or defenses in the commercial dispute. When deciding whether to litigate, each party

must weigh the potential benefits of prevailing against the potential costs of losing. There is a direct relationship between a party's decision to litigate a commercial dispute and the benefits or costs which flow from that decision.

However, if § 12–120(2) were construed to mandate an additional fee award in an appeal taken solely from the amount of fees awarded below, the benefits and costs of litigating a commercial dispute would become less clearly identifiable. As noted earlier, the party who prevailed on the commercial dispute might receive little or no net benefit from the fee award. Conversely, the party who lost in the commercial dispute might incur either no net attorney fee obligation to the winner or a total obligation far beyond that attributable to his decision to litigate. The obligation could include fees awarded in an appeal which he did not file and which arose solely from an exercise of trial court discretion.

We do not believe our Legislature, when enacting I.C. § 12–120(2), contemplated that the statutory scheme for allocating the legal expense of litigating commercial disputes would be distorted by such mandatory stacking or offsetting of fee awards. Neither do we believe the Legislature intended § 12–120(2) to compel one person to pay another's attorney fees on appeal in proceedings concerned only with the amount of fees awarded below.[2] Rather, as explained in Part C below, we believe a fee award in this type of appeal is governed by the broader, discretionary authority conferred by I.C. § 12–121.

### B

Before turning to § 12–121, we must consider appellants' assertion that our view of § 12–120(2) is contrary to prevailing case law. Our attention is invited to a number of cases invoking federal statutes to award fees on appeal for attorneys' efforts to obtain or to preserve adequate fee awards

---

2. Our observations are confined to appellate review. They are not directed toward proceedings in the trial court where the award is made. Neither do we suggest that a trial court is in any way precluded from making an award under § 12–120(2) in litigation between a lawyer and a client regarding attorney fees owed on open account or account stated.

at trial. *See, e.g., Gagne v. Maher,* 594 F.2d 336 (2d Cir.1979), *aff'd* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Weisenberger v. Huecker,* 593 F.2d 49 (6th Cir.1979); *Ferdinand v. City of Fairbanks,* 599 P.2d 122 (Alaska 1979) (applying federal law); *Prandini v. National Tea Co.,* 585 F.2d 47 (3d Cir.1978). However, the statutes examined in cases cited by appellants are unlike I.C. § 12–120(2). They provide fee awards to litigants who assert claims favored by federal social policies in such subject areas as civil rights, voting rights and sex discrimination. Fees have been awarded on appeal in these cases as a means of advancing the federal policies. As noted in *Prandini:*

> If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased. Recognizing this fact, attorneys may become wary about taking Title VII cases, civil rights cases, or other cases for which attorneys' fees are statutorily authorized. Such a result would not comport with the purpose behind most statutory fee authorizations, *viz,* the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies. [585 F.2d at 53.]

The concept of a private attorney general is not limited to federal statutes. It also is rooted in case law. *See Hellar v. Cenarrusa,* 104 Idaho 858, 664 P.2d 765 (1984); *Woodland Hills Residents Ass'n v. City Council of Los Angeles,* 23 Cal.3d 917, 154 Cal.Rptr. 503, 593 P.2d 200 (1979). However, whether it is codified or expressed in court opinions, the private attorney general concept is grounded in the view that an advocate of the public interest is entitled to fees beyond those which his client ordinarily can pay. Such fees are imposed upon the adverse party when a private attorney general's client prevails. In such cases the purpose of the fee awards is to provide an incentive for representing litigants who assert publicly favored claims. Fees for fee-related work are allowed in order to avoid

dilution of this overriding purpose. *See, e.g., Serrano v. Unruh,* 32 Cal.3d 621, 186 Cal.Rptr. 754, 652 P.2d 985 (1982).

We further acknowledge that several Idaho statutes other than § 12–120(2) have been construed to allow fee awards in appeals concerned, in part, with fee awards below. *See State ex rel. Kidwell v. U.S. Marketing, Inc.,* 102 Idaho 451, 631 P.2d 622 (1981) (interpreting the moral nuisance abatement statute, I.C. § 52–415); *Mayo v. Safeway Stores, Inc., supra* (interpreting the former workmen's compensation claim statute, I.C. § 72–611); *Halliday v. Farmers Insurance Exchange, supra* (interpreting the insurance claim statute, I.C. § 41–1839). These cases are distinguishable from the instant case because there attorney fees were not the sole focus of the appeals and because the attorney fee issue in each case was the propriety of awarding any fees below, not the reasonableness of the amount awarded. In addition, each of these cases construed a statute identifying a favored category of claimant—i.e., a governmental entity abating a moral nuisance, a person claiming workmen's compensation benefits, or an insured seeking to collect under his insurance policy. Like the private attorney general cases, these cases were imprinted with strong public policies favoring certain classes of litigants.

Section 12–120(2) stands in stark contrast to the private attorney general concept and to statutes designating favored claimants. As noted in Part I of this opinion, § 12–120(2) favors no claim or category of litigant. It announces no public policy to be vindicated by private attorneys general. It performs the essentially private, ad hoc function of allocating between litigants the legal expense of settling certain commercial disputes through the court system. Although this allocative scheme incidentally serves a public purpose by encouraging meritorious claims or defenses—and by discouraging those which are not meritorious—it does so on a strictly policy-neutral and party-neutral basis. Moreover, as explained above, the statute's allocative purpose would be distorted if it were con-

strued to mandate fees in appeals taken not upon issues related to commercial disputes but solely upon the reasonableness of fees awarded below. Consequently, we decline to interpret § 12–120(2) by analogy to cases and statutes embodying the concepts of private attorneys general or favored claimants.

In cases not involving private attorneys general or favored claimants, the courts have been divided on whether fees should be awarded in appeals challenging amounts awarded below. There are, of course, cases where statutes providing for discretionary, rather than mandatory, awards have been construed to allow additional awards on appeal to parties who successfully defended awards received below. *E.g., Porter v. Treasurer and Collector of Taxes of Worcester*, 385 Mass. 335, 431 N.E.2d 934 (1982); *Marketing Unlimited, Inc. v. Jefferson Chemical Co.*, 90 Wash.2d 410, 583 P.2d 630 (1978).

In other cases, the courts have refused to award attorney fees on appeal where the sole issue was the adequacy of a fee award below. In *People v. Johnson*, 87 Ill.2d 98, 57 Ill.Dec. 599, 429 N.E.2d 497 (1981), attorneys who had represented an indigent criminal defendant were granted a civil judgment for their fees under an Illinois statute providing "reasonable compensation" for indigent defense services. The attorneys appealed the award, contending that it was inadequate and that they were entitled to additional fees on appeal. The Illinois Supreme Court agreed that the fees awarded below were inadequate, and the case was remanded for a redetermination of the award. However, the court declined to award further fees on appeal. The court said the statute did not authorize additional fees in an appeal concerned only with a question of fees and not with the underlying criminal case. The court also declined

to award additional fees upon any equitable principle.

Similarly, in *Mandel v. Lackner*, 92 Cal. App.3d 747, 155 Cal.Rptr. 269 (1979), a California appellate court considered the attorney fee claim of a plaintiff who had prevailed in public interest litigation. In an earlier appeal the plaintiff had been held entitled to a fee award, under an equitable theory of "substantial benefit." The amount of the award then was determined upon remand. The defendant appealed this determination and the plaintiff sought additional attorney fees for responding to the second appeal. The appellate court denied such additional fees. The court stated, as one of the reasons for denial, that the substantial benefit theory had served its purpose when the judgment in the underlying lawsuit became final. Only a private interest was involved in the subsequent appeal from the amount awarded.[3]

We do not suggest that these cases—any more than the private attorney general and favored claimant cases—should control our interpretation of § 12–120(2). But they do show that the case law on attorney fees is not monolithic. Fees on appeal, solely for challenging or preserving an amount awarded below, have not been uniformly granted or denied. Each case turns upon its own statute or upon the particular equitable principle applied. Consequently, we find nothing in the case law to negate our analysis of § 12–120(2). We conclude that § 12–120(2) should not be extended by judicial construction to mandate an attorney fee award on appeal where the sole issue is the reasonableness of an amount awarded below.

## C

By refusing to make such an award mandatory under § 12–120(2), we do not preclude an award in all circumstances. An award still may be allowed under I.C.

---

**3.** The *Mandel* court did not reach the question of whether the additional award sought on appeal could have been justified under a private attorney general concept. When *Mandel* was decided, that concept had not yet been adopted in California. The California Supreme Court later applied the codified concept of private attorney general in *Serrano v. Unruh, supra.* The Supreme Court distinguished *Mandel* on that basis and did not overrule *Mandel's* treatment of fees under the substantial benefit theory.

§ 12–121. This statute broadly provides that "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party...." Section 12–121 has been held applicable to appeals. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979).

This statute differs from § 12–120(2) in two important respects. It is permissive, not mandatory; and it contains no subject matter limitation. It may be applied even if the appeal focuses not upon the subject of the underlying litigation but solely upon an award of attorney fees below. *See Conner v. Dake*, 103 Idaho 761, 653 P.2d 1173 (1982). If such an appeal is brought or defended frivolously, unreasonably or without foundation, an award of additional fees may be made under § 12–121. *Minich v. Gem State Developers, Inc., supra.*

Of course, when fee awards are made on appeal under § 12–121, they may have the same stacking or offsetting effect earlier ascribed to awards under § 12–120(2). But § 12–121 has less potential to intrude upon the allocative purpose of § 12–120(2) than would appellate application of § 12–120(2) itself. Section 12–121 applies narrowly to appeals brought frivolously, unreasonably or without foundation; § 12–120(2) would apply to all appeals in which a prevailing party is identified. Moreover, § 12–121 is invoked only by a party's decision to bring or to defend an appeal groundlessly. If that party finds that fees have been stacked against him, or that his award below has been offset by an adverse award on appeal, the result is one which he has invited.

We hold that § 12–121 is the appropriate statute to apply in an appeal of the type presented here. Consequently, we must decide whether the instant appeal meets the *Minich* criteria. This question is not one to be reserved for remand. In our view, this appeal has presented genuine issues concerning the district court's fee award. DeWils has not acted frivolously, unreasonably or without foundation in responding to the appeal. Accordingly, we

conclude that no attorney fees on appeal should be awarded under § 12–121.

The order of the district court, awarding costs and attorney fees, is hereby vacated. The case is remanded for further proceedings in accordance with this opinion. Costs, but no attorney fees on appeal, to appellants.

WALTERS, C.J., and SWANSTROM, J., concur.