757 P.2d 1204

Dan HOWARD and Stephanie Howard,
husband and wife,
Plaintiffs-Respondents,

v.

BLUE CROSS OF IDAHO HEALTH
SERVICE, INC., an Idaho
corporation, Defendant-Appellant.

No. 16370.

Court of Appeals of Idaho.

Oct. 5, 1987.

Addendum on Petition for Rehearing
June 13, 1988.

Petition for Review Denied Sept. 30, 1988.

Jeffrey A. Strother of Moffatt, Thomas, Barrett & Blanton, Boise, for defendant-appellant.

John C. Hohnhorst and D. Brent Martens of Hepworth, Nungester & Felton of Twin Falls and Buhl, for plaintiffs-respondents.

SWANSTROM, Judge.

Dan and Stephanie Howard filed suit against Blue Cross of Idaho Health Service, Inc., to recover benefits allegedly due under their contract, for medical services furnished to their newborn son. Blue Cross denied liability based in part on the Howards' failure to enroll their son as required by the contract. A magistrate awarded judgment to the Howards with interest, costs and attorney fees. Blue Cross appealed to the district court where the magistrate's decision was affirmed. Blue Cross now appeals to this Court, contending that (1) the magistrate erred in finding that Blue Cross' enrollment requirement for newborns violates I.C. § 41–3437; (2) the Howards' failure to timely enroll their son as required by their contract bars the Howards' claim of coverage; (3) cancellation of the group contract under which the Howards were insured extinguished Blue Cross' contractual liability to the Howards; (4) the district court erred in equating the enrollment requirement with a proof of loss requirement; and (5) both lower courts erred in awarding attorney fees against a non-profit health service corporation. For reasons set forth below, we affirm the magistrate's judgment except as to the award of attorney fees.

In 1980, Dan Howard began work at the Buhl, Idaho, outlet of Roper's, a group of retail clothing stores. Roper's had a contract with Blue Cross to which Roper's employees could subscribe to obtain coverage for health services. Roper's acted as liaison between the employees and Blue Cross, distributing and collecting application forms, submitting requested coverage changes, and deducting monthly subscription charges from the employees' wages, and remitting the charges to Blue Cross.

Beginning in 1981 and continuing through May of 1982, Dan and Stephanie Howard were covered by a "two-party membership" under the contract Blue Cross issued to Roper's. On April 4, 1982, Stephanie gave birth to a son, Stephen. The providers of medical services for Stephanie and Stephen sent bills to Blue Cross as requested by the Howards. In accordance with provisions of the contract, Blue Cross paid hospital and doctor maternity benefits for Stephanie. These benefits paid included the usual incidental services for the newborn child during the mother's maternity confinement. About these benefit payments there is no dispute.

During delivery, complications arose that required Stephen to remain hospitalized for

·six days, resulting in bills totalling more than $2,700 for his care. Following Stephen's release from the hospital, Dan Howard approached Roper's bookkeeper at the Buhl store to determine the necessary steps to assure Stephen's coverage under the group contract and was told that nothing need be done. In fact, however, the contract stated: "Newborn infants shall be covered hereunder from date of birth for illness, injury or congenital anomaly, provided the infant is added as an eligible dependant within thirty (30) days of birth."

During April, Blue Cross received bills from the doctors and hospitals who treated Stephen while he was, according to the contract, "a patient in his own right." In May, the Howards began receiving notices from Blue Cross advising them that Stephen was not covered under their contract.

Effective June 1, 1982, Roper's terminated its group contract with Blue Cross. Subsequently, Stephanie Howard asked Blue Cross to explain its denial of claims submitted for Stephen's care. Following this inquiry, on June 24, the Howards submitted a formal request to Blue Cross to enroll Stephen under the contract. Blue Cross refused the request due to the expiration of the enrollment grace period and to Roper's termination of Blue Cross group coverage. The Howards brought this action to recover Stephen's medical costs, asserting that Blue Cross is statutorily required to furnish coverage for Stephen from the moment of birth under I.C. § 41–3437. The relevant part of the statute reads as follows:

> There shall be a provision that a subscriber's contract, delivered or issued for delivery in this state ... which provides coverage for injury or sickness for dependent children of subscribers or other members of the covered group, shall provide coverage for such newborn and infants from and after the moment of birth. Coverage provided in accord with this section shall include, but not be limited to, coverage for congenital anomalies of such infant children from the moment of birth.

The magistrate held that Blue Cross' enrollment conditions for newborns violated I.C. § 41–3437; that Stephen was entitled to automatic coverage from the moment of birth; and that the Howards had made a timely request to Blue Cross to have their son added to their contract. On appeal, the district court affirmed the magistrate's ruling, but held that the "automatic" coverage extended for only thirty days following Stephen's birth. The district court also held that the bills submitted by the hospital and doctors gave sufficient notice to Blue Cross that the Howards were making a claim for Stephen's coverage. The district court did not, however, hold that the enrollment requirement was invalid. Rather, it equated the enrollment requirement with a "proof of loss" requirement. Accordingly, the district court concluded that the Howards' untimely attempt, on June 24, to enroll Stephen would not defeat their claim absent a showing by Blue Cross that the delay had caused some prejudice. This ruling is also challenged by Blue Cross in this appeal.

■ The first question we address is whether I.C. § 41–3437 mandates "automatic" coverage for newborns. The Howards contend, and the magistrate held, that it does. Blue Cross argues that the statute requires only that coverage for newborns be *offered*. In deciding this issue we are presented solely with a question of law. Accordingly, we exercise free review, without deferring to the conclusions of either the magistrate or the district judge. *Linn v. North Idaho District Medical Service Bureau, Inc.*, 102 Idaho 679, 638 P.2d 876 (1981).

The principal rule governing statutory interpretation is to give effect to the Legislature's intent. Of course, if the intent is clear from the language used, "there is no occasion for construction." *Worley Highway District v. Kootenai County*, 98 Idaho 925, 928, 576 P.2d 206, 209 (1978), *quoting State v. Riley*, 83 Idaho 346, 349, 362 P.2d 1075, 1076–77 (1961). However, where, as here, it is necessary to construe a statute,

this Court may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. The legislative purpose in enacting a statute is also a factor to be considered in statutory construction. *Mix v. Gem Investors, Inc.,* 103 Idaho 355, 647 P.2d 811 (Ct.App.1982).

Idaho Code § 41–3437 was enacted as part of 1974 Idaho Sess. Laws, ch. 66. The statement of purpose accompanying this Act noted that most existing disability insurance contracts and subscriber contracts providing coverage for newborn dependent children had a two-week delay before commencement of coverage. It is apparent from the statement of purpose and from the Act itself that the thrust of this legislation was to eliminate this prevalent gap in coverage for dependent children. Nothing in the Act or in its statement of purpose indicates that it was intended to affect *whether* coverage for dependent children is provided by an insurer or by a service corporation such as Blue Cross. Only *if* the coverage is provided, it must include coverage for "newborn and infants from and after the moment of birth." Thus, the statute expressly mandates only the *time when* coverage shall commence *if* coverage is provided.

In related arguments, the Howards contend that the enrollment requirement contained in the group contract defeats the purpose of the statute to provide automatic coverage and that it is against public policy. In countering this argument Blue Cross relies, in part, upon the fact that the contract in question was submitted to and approved by the Director of the Department of Insurance. Idaho Code § 41–3417(6) provides that "[a]ll proposed forms of subscriber's contracts shall be filed with the director and be subject to his approval, as provided in section 41–3419, Idaho Code." Similar requirements for approval of insurance policies are found in I.C. §§ 41–1812, 1813.

Recently, in *Hansen v. State Farm Mutual Automobile Insurance Company,*

112 Idaho 663, 667–68, 735 P.2d 974, 978–79 (1987), our Supreme Court said:

> The legislature has delegated to the Director the responsibility of assuring that insurance contracts utilized in this state comport with public policy. In I.C. § 41–113, the legislature has specifically stated that "[t]he business of insurance is one affected by the public interest, requiring that *all persons* be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters...." [Emphasis original.] Thus, the legislature has concomitantly provided the Director of the Department of Insurance with authority to disapprove any insurance policy form which "[c]ontains or incorporates by reference, where such incorporation is otherwise permissible, any inconsistent, ambiguous, or misleading clauses, or exceptions and conditions which deceptively affect the risk purported to be assumed in the general coverage of the contract, or which are unfairly prejudicial to the policy holder." I.C. § 41–1813.... The statutory scheme is clear. The Director of the Department of Insurance is the person entrusted by the legislature to determine whether or not given policies comport with the public interest. Policies approved by the Director are thus presumed to be in harmony with public policy. *In the absence of proof that a policy contains provisions which conflict with express legislative directives, the Director's approval of an insurance policy form is an administrative determination that the policy form is in the "public interest."* I.C. § 41–113. [Emphasis added.]

We conclude that the requirement to enroll a newborn child within thirty days of birth is not, per se, against public policy, nor does the requirement offend I.C. § 41–3437.

■ Having held that the enrollment requirement is valid, we must next determine the role it plays in this case. The magistrate found, on inconclusive evidence, that

Blue Cross at no time prior to June 1, 1982, advised the Howards of the enrollment requirement. However, on appeal to the district court, the parties stipulated that the Howards' answer to interrogatories would be part of the appellate record. Their answer showed—and the district court found —that the Howards were given an "explanation of benefits" booklet when the Howards became subscribers to the group contract in 1981. The booklet is not a part of the subscriber's contract. Nevertheless, it must be considered for the information which it imparts to the subscriber about the enrollment requirement. The booklet contained the following language: "Care for newborn infants is available from date of birth, provided that the infant is enrolled by the subscriber as a family member within 30 days of birth." As we have already noted, the contract delivered to the Howards merely mentions the need to "[add] ... an eligible dependent within thirty (30) days of birth." Because these two documents were timely furnished to the Howards by Blue Cross, the magistrate's finding that the Howards had not received *any* timely notice of the enrollment requirement cannot be upheld.

Nevertheless, the magistrate's finding suggests a need to examine the *adequacy* of the information conveyed by Blue Cross to the Howards about how to enroll their newborn child. The booklet and the contract, taken together, simply state that, as the "subscriber," Dan Howard has a need to enroll or "add" his newborn infant "as a family member within 30 days of birth" in order for the infant to be covered from date of birth for any "illness, injury or congenital anomaly." No explanation is given about how the enrollment is to be made or to whom the requisite information must be given. Neither is anything said about the particular information that must

be furnished with the enrollment, about any special application forms that might be required, or about any additional subscriber fees that might be immediately payable before the enrollment would be accepted by Blue Cross. Dan Howard was aware, of course, that his employer had been deducting subscriber charges for a "two-party membership" and would deduct additional charges when his child was added. Thus, it is not surprising that within thirty days of the child's birth, Dan Howard went to the bookkeeper where he worked and asked what needed to be done to have his child covered. When he was then told that nothing need be done, Dan Howard had received no contrary information from Blue Cross. Under these circumstances, he could reasonably expect that his son would be added to his contract.

We have no quarrel with the enrollment requirement as approved by the Director of Insurance. The problem lies with its implementation. A subscriber is entitled to know not only of the existence of the requirement but also how the subscriber is expected to comply with it in the limited time prescribed by the contract. The party who imposes this requirement must do so clearly and in writing. Otherwise, the procedural steps required by the service corporation, in this instance, may become a hidden barrier to the highly important coverage "from the moment of birth" which our Legislature has said must be available in certain service and insurance contracts. We conclude that the notice given here through the contract and informational booklet was insufficient to inform the Howards of the basic steps they needed to take to enroll their child. Any notice they received subsequent to the birth of their child was not timely. Accordingly, the thirty day time limit imposed by the contract should not be enforced in this instance.[1]

1. In administering its group contract Blue Cross set up procedures with the employer Roper's for handling applications for enrollment of new subscribers and eligible dependents. Blue Cross furnished Roper's with its "Group Administrator's Manual" which instructed Roper's how to enroll new members, make membership changes, adjust the monthly billings accordingly, remit monthly payments and other matters. The manual specified that application and payment were to be submitted with either the first or second monthly group billing coming due

The record shows that once the Howards learned of the need to submit an application for enrollment they acted promptly and within a reasonable time. We hold narrowly upon the particular facts of this case that the district court did not err in ruling that the Howards' enrollment application was timely.

In the appeal to us, both parties have argued the question of whether Roper's was acting as the agent of Blue Cross or of the employees in performing services relating to the administration of the group contract. This issue could affect whether the failure to timely enroll Stephen shall be deemed to be the failure of the Howards or of Blue Cross. It is clear from the record that the Howards did not rely on any agency theory at trial. Blue Cross broached the issue in response to certain objections and evidentiary rulings made in the trial court. Blue Cross now asserts that the magistrate erred in rejecting an offer of proof concerning agency. However, the record does not show that these alleged errors were raised in the appeal to the district court. The agency theory was not discussed or relied upon by either the trial court or the district court. Accordingly, we decline to address the issue now in this appeal. *See Centers v. Yehezkely*, 109 Idaho 216, 706 P.2d 105 (Ct.App.1985).

■ Finally, we address the award of attorney fees below. The magistrate awarded attorney fees to the Howards based on I.C. § 41–1839 which mandates an award of fees in certain actions brought by claimants who must resort to suit in order to recover on a policy against an "insurer." *See, e.g., Hansen v. State Farm Mutual Automobile Insurance Company*, 112 Idaho 663, 735 P.2d 974 (1987).

An award of attorney fees against Blue Cross based on I.C. § 41–1839 cannot be sustained. Blue Cross is not an "insurer" as defined by I.C. §§ 41–103 and 41–3301(2). Rather, Blue Cross is a non-profit "service corporation" as defined by I.C. § 41–3403(2). Only for certain limited specified purposes is a service corporation "deemed to be an 'insurer.'" I.C. §§ 41–3423, –3426. And only particular designated chapters and sections of the Idaho Code dealing with "insurers" and "insurance companies" are applicable to service corporations such as Blue Cross. I.C. §§ 41–114, –115, –3404, –3434. This clear differential treatment by our Legislature between service corporations, such as Blue Cross, on the one hand and insurance companies on the other is not an Idaho anomaly. Other states have made similar statutory distinctions. *See, e.g., Kent General Hospital, Inc. v. Blue Cross and Blue Shield of Delaware, Inc.*, 442 A.2d 1368 (Del.1982); *Blue Cross Hospital Service, Inc. of Missouri v. J.H. Frappier*, 681 S.W. 2d 925 (Mo.1984); *Obstetricians-Gynecologists, P.C. v. Blue Cross and Blue Shield of Nebraska*, 361 N.W.2d 550 (Neb.1985); *New Mexico Life Insurance Guaranty Association v. Moore*, 93 N.M. 47, 596 P.2d 260 (1979); *New Hampshire-Vermont Hospitalization Service v. Commissioner, Department of Banking and Insurance*, 133 Vt. 333, 339 A.2d 453 (1975). Idaho Code § 41–1839, providing for an award of fees against an "insurer," is not included among those sections applicable to non-profit "service corporations."

In spite of these clear statutory provisions, the Howards argue that fees have been awarded against non-profit service corporations. The Howards point to *Linn v. North Idaho District Medical Service Bureau, Inc.*, 102 Idaho 679, 638 P.2d 876 (1981). It is true that the Supreme Court in *Linn*, after reversing the trial court on the main issue, directed the trial court on

---

following the date of birth. Normally, this procedure would extend the enrollment time beyond thirty days. Certain designated employees of Roper's were furnished with the Group Administrator's Manual. However, the bookkeeper at the Buhl store where Howard worked was not familiar with the requirements for enrolling newborn infants. Howard, of course, had no knowledge of the procedures contained in the manual. Moreover, cancellation of the group contract effectively eliminated the extended enrollment opportunity in this case. Therefore, Howard gained no benefit from these enrollment procedures.

remand to enter a judgment for Linn that included attorney fees. The fees were presumably awarded under I.C. § 41–1839 against Medical Service Bureau, a medical service corporation. The Howards also point to certain language in *Linn* stating that "the same basic *principles* of insurance law apply to service corporations as to any other insurance company." *Id.* at 687, 638 P.2d at 884 (emphasis added). This quotation was in a discussion of an issue totally unrelated to the award of attorney fees. The *statutes* we have mentioned which control this issue here were not considered. Our research indicates that the applicability of § 41–1839 was not made an issue in the *Linn* appeal. The failure of the service corporation in *Linn* to raise the issue does not prevent Blue Cross from raising the issue here, as it did in the trial court. We do not view *Linn* as controlling here.

■ The district court also concluded that the magistrate erred in awarding fees under I.C. § 41–1839. However, holding that this action was brought on an "open account," the district court held that, under former I.C. § 12–120(2)—as it existed prior to a 1987 amendment—the Howards were entitled to the fees awarded by the magistrate.

Section 12–120 allows a prevailing party to recover attorney fees in an action brought for recovery on an open account. We have defined "open account" as "an account with a balance which has been ascertained ... [and which] is kept open in anticipation of future transactions." *Kugler v. Northwest Aviation, Inc.*, 108 Idaho 884, 702 P.2d 922 (Ct.App.1985). The Howards would have us hold that the open account relative to this case consists of the billings submitted to Blue Cross by the various health care facilities for services rendered to Stephen. We decline to so hold. No "open account" was maintained by the Howards. Nor was any open account maintained by Blue Cross for the Howards. This was simply an action brought on a contract to recover certain contract benefits. We hold that former I.C. § 12–120 does not provide a basis for awarding fees to the Howards.

In summary, we affirm the order of the district court upholding the magistrate's judgment for benefits payable to the Howards. We reverse the order allowing attorney fees incurred in the magistrate division and in the district court. The trial court's judgment as modified will bear interest at the judgment rate from the date of its original entry. Costs for this appeal are awarded to the Howards. No attorney fees are awarded.

WALTERS, Chief Judge, specially concurring.

I concur in the foregoing opinion, although very reluctantly on the attorney fees determination. Ordinarily, I would be constrained to follow an opinion of our Supreme Court, such as *Linn v. North Idaho District Medical Service Bureau, Inc.*, 102 Idaho 679, 638 P.2d 876 (1981), even though I might disagree with that opinion. Here, the result in *Linn* seems reasonable—Blue Cross should be treated as an insurance company and I.C. § 41–1839 should allow an award of attorney fees. But, as our decision in this case points out, the statutes governing service corporations preclude application of § 41–1839. Our Supreme Court—whether intentionally or not—failed to explain in *Linn* how it found the statute applicable. It simply referred to the medical payments coverage contract in that case as an "insurance policy." I would welcome a review by our Supreme Court in the instant case to clarify its ruling in *Linn*.

BURNETT, Judge, dissenting in part.

I join the Court in upholding judgment for the Howards on their claim for benefits under the Blue Cross contract. However, I respectfully disagree with the Court's disallowance of attorney fees on appeal and its reversal of the attorney fee awards made below.

The Court acknowledges that its ruling on attorney fees is contrary to the allowance of fees by our Supreme Court in *Linn v. North Idaho District Medical Service Bureau, Inc.,* 102 Idaho 679, 638 P.2d 876 (1981). The Court does not—indeed, cannot—distinguish *Linn.* Rather, the Court sidesteps *Linn,* observing simply that the Supreme Court did not consider the problem of statutory interpretation discussed today. The question, simply put, is whether Blue Cross and similar organizations should be subject to I.C. § 41–1839, which authorizes awards of attorney fees against insurance companies.

This question does not yield a single, clear answer. Although a strong technical argument can be made that Blue Cross is not an insurance company, an equally strong commonsense argument can be made to the contrary. These conflicting viewpoints are portrayed in *Weber v. Blue Cross of Montana,* 196 Mont. 454, 643 P.2d 198 (1982), a case in which a virtually identical issue produced a sharply divided Montana Supreme Court. Because reasonable people may entertain differing views on this question, I would not presume to disregard what our own Supreme Court has done in *Linn.*

Moreover, even if Blue Cross is a professional service corporation rather than an insurance company, it is subject to Idaho's Unfair Claims Settlement Practices Act. *See* I.C. § 41–3434(9). The Act, at I.C. § 41–1329, enumerates various unfair claims settlement practices, including "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds...." That, in essence, is what Blue Cross has done here. It refused the Howards' claims and forced them to litigate. Concededly, our Supreme Court has held that the Act does not create private causes of action. *White v. Uniguard Mutual Insurance Co.,* 112 Idaho 94, 730 P.2d 1014 (1986). But the Act, and the statute explicitly making it applicable

to medical service corporations, still may be treated as an expression of legislative intent that companies like Blue Cross should bear the cost, including attorney fees, of lawsuits successfully brought by subscribers to recover the benefits to which they are entitled.

## ADDENDUM

### On Petitions for Rehearing

PER CURIAM.

Our lead opinion unanimously holds that the Howards are entitled to payment of benefits under the Blue Cross contract. By a majority vote, however, the opinion denies the Howards' claim for attorney fees. After the opinion was issued, we received and granted petitions for rehearing on both sides. For reasons explained below, we adhere to our original decision.

We turn first to the question of benefits under the contract. Much argument upon rehearing has focused on the existence, or lack, of an agency relationship between Blue Cross and Mr. Howard's employer (the Roper's clothing store chain). Blue Cross argues that Roper's was not its agent and, absent such agency, Blue Cross could not be bound by the statement, from Roper's bookkeeper to Mr. Howard, that coverage automatically existed for the newborn child. In our lead opinion, we acknowledged that an agency issue had been raised but we declined to address it because, so far as the record then showed, the issue had not been urged on the initial appeal from the magistrate division to the district court. In conjunction with its petition for rehearing, Blue Cross sought and obtained leave to augment the record. The augmented record shows that the agency issue was argued to the district court. Accordingly, for the sake of discussion, we will assume that the issue was properly preserved for the appeal now before us.

■ It is one thing to say that the issue was preserved; it is quite another to say that the issue is dispositive. As explained

in our lead opinion, timely enrollment of a newborn child was a condition precedent to coverage of the child under the Blue Cross contract. However, neither the contract nor an explanatory brochure furnished to the Howards set forth a mandatory method by which Blue Cross was to be notified of a child's birth. It is a well-settled principle in contract law that if one party is required to give notice to another, such as notice of acceptance of an offer, and if no exclusive mode of communication has been prescribed, the notice may be given by any reasonable method. *See generally* 1 A. CORBIN, A COMPREHENSIVE TREATISE ON THE RULES OF CONTRACT LAW §§ 77, 88 (1963). We think the same principle applies to a notice required under the contract itself. A reasonable method of giving notice may be determined by reference to circumstances surrounding the contract and by a course of dealing between the parties. *See* RESTATEMENT SECOND OF CONTRACTS § 65. If the circumstances and course of dealing indicate that a third party will act as a point of contact for the parties, notice given through the third party will be deemed proper under the contract. RESTATEMENT § 65, comment b; *cf.* I.C. § 28-1-201(26)(b) (Uniform Commercial Code provision that, unless otherwise agreed, notice under a contract may be given "at the place of business through which the contract was made....").

Here, the Blue Cross contract created a point of contact, designating the employer as the "group administrator." Moreover, it is undisputed that the normal course of dealing between Blue Cross and its subscribers was through each subscriber's employer. The employer was given certain functions as defined fully in a "group administrator's manual." This manual contained specific instructions on enrolling new subscribers, adding eligible dependents, collecting premiums from the employees, and remitting payments to Blue Cross. Upon these uncontroverted facts, we hold that when Mr. Howard informed Roper's bookkeeper about the newborn child, he gave notice by a method which was reasonable and which was not excluded by the contract.

We need not decide whether the functions of the "group administrator" under the contract embraced all the trappings of an agency relationship with Blue Cross or with the subscribers. Nor need we decide whether Blue Cross was bound by the bookkeeper's statement about automatic coverage. The dispositive issue is notice. On that issue it is sufficient to hold, as we have, that communication with the "group administrator" was a permissible means of giving notice under the contract in this case.

We now turn to the question of attorney fees. In the lead opinion, a majority of this Court held that Blue Cross, as a service corporation, is not subject to awards of attorney fees under I.C. § 41-1839. We also held, unanimously, that an attorney fee award could not be made under I.C. § 12-120 or I.C. § 12-121. In their petition for rehearing, the Howards have asked us to reconsider our rulings with respect to I.C. §§ 12-120 and 41-1839. Legislation affecting each of these statutes has been passed during the pendency of this appeal.

When the Howards' suit was commenced, I.C. § 12-120 applied only to actions for money up to $2,500 and to actions based on certain enumerated forms of commercial transactions. The Howards' complaint, seeking to recover medical and hospital benefits of approximately $2,900, did not fit within the existing confines of the statute. However, in 1986, the statute was broadened to include a civil action brought upon "a contract relating to ... services" or a civil action of any description seeking money up to $25,000. The Howards would have us apply the amended statute retrospectively to this case.

In *Myers v. Vermaas*, 114 Idaho 85, 753 P.2d 296 (Ct.App.1988), we recently declined to apply I.C. § 12-120 retrospectively. We discussed the oft-stated but elusive

distinction between substantive and procedural rights. We observed that a statute such as I.C. § 12–120, which mandates an attorney fee award rather than simply authorizing a discretionary award, creates an entitlement closely akin to other vested rights in the underlying contract. It adds, in essence, a provision to the contract itself. Accordingly, we held that the entitlement to a mandatory award under I.C. § 12–120 more closely resembles a substantive right than a merely procedural right.

We also noted in *Myers* that a mandatory fee-shifting statute produces a harsh result for the non-prevailing party whose claim or defense is meritorious but unsuccessful. Such a result can be deemed fair only if the operation of the statute is known in advance and the parties are able to guide their litigation decisions accordingly. *See DeWils Interiors, Inc. v. Dines,* 106 Idaho 288, 293, 678 P.2d 80, 85 (Ct.App.1984). We concluded in *Myers* that "a retrospective application of the 1986 amendment to I.C. § 12–120 would distort this decision-making process. It would profoundly alter—after the fact—the costs and benefits of submitting a meritorious (albeit disputed) claim to the courts for resolution." 114 Idaho at 87, 753 P.2d at 298. We adhere to that reasoning today.

This brings us to the claim for attorney fees under I.C. § 41–1839. As noted, a majority of this Court held in the lead opinion that a medical service corporation such as Blue Cross was not subject to this statute. Possibly in response to our opinion, the 1988 session of the Legislature amended I.C. § 41–3434, which enumerates provisions of the insurance code that will be deemed applicable to medical service corporations. As amended, I.C. § 41–3434 now includes I.C. § 41–1839.

A retroactivity analysis would not necessarily yield the same result on I.C. § 41–1839 as we reached on I.C. § 12–120. It could be argued that the broadened scope of I.C. § 41–1839 simply reflects a previously articulated policy of requiring companies like Blue Cross to bear the costs of litigation, including reasonable attorney fees, in successful suits for benefits due. *See Linn v. North Idaho Dist. Medical Service Bureau, Inc.,* 102 Idaho 679, 638 P.2d 876 (1981). However, we do not reach that question today. The bill containing the 1988 amendment did not carry an emergency clause. *See* 1988 Idaho Sess.Laws ch. 8, p. 10. Consequently, the amendment will not become effective until July 1, 1988.

We think it would be conceptually unsound for us to determine whether a statute not yet in effect should be given retrospective application—an exercise in prospective retroactivity, as it were. Neither do we think it would be proper for us to delay a decision on rehearing for the artificial purpose of awaiting the effective date of the statutory amendment. In any event, the appeal likely will be extended beyond July 1 because both sides already have filed petitions for review in the Supreme Court. The retroactivity question could be framed properly in that Court at the proper time. Upon the present record and state of the law, we will adhere to the views set forth by each of us in the lead opinion, or in the special opinions which accompanied it, on the attorney fee issue.