**New Hampshire-Vermont Physician Service v. Commissioner, Department of Banking & Insurance**
**and**
**New Hampshire-Vermont Hospitalization Service v. Commissioner, Department of Banking & Insurance**

[326 A.2d 163]

Nos. 148-73 and 149-73

Present: **Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.**

Opinion Filed October 1, 1974

*Paterson, Gibson, Noble & Brownell,* Montpelier, for Plaintiffs.

*Kimberly B. Cheney,* Attorney General and *Martin K. Miller,* Deputy Attorney General, for Defendant.

**Keyser, J.** These consolidated appeals are taken from an order issued on May 14, 1973, by the Vermont Commissioner of Banking and Insurance, following nine days of hearings conducted on the question of rate increases sought by New Hampshire-Vermont Physician Service (Blue Shield) and New Hampshire-Vermont Hospitalization Service (Blue Cross). The Commissioner ordered a decrease in the rates charged by Blue Shield and granted an increase in the rates charged by Blue Cross, although this increase fell considerably short of that requested. In addition, the Commissioner:

(1) Ordered the Plans to cease unfair discrimination between group and nongroup subscribers and to make all group coverages available to all citizens.

(2) Ordered the Plans to cease offering low-benefit contracts to new subscribers.

(3) Ordered the Plans to eliminate certain coverage clauses which unfairly discriminated against women.

(4) Ordered the Plans to increase the maximum major medical lifetime benefit to $250,000 per covered claimant and provide a maximum coinsurance payable clause no greater than $1,000 per year per covered claimant with no upward adjustment in the rate level.

(5) Directed the Plans to reconstitute their respective Boards of Directors "so that a clear-cut majority have

absolutely no connection with the hospital-physician-insurance complex."

The Commissioner also issued several "supplemental recommendations" which were merely suggestive in nature and effect and thus improper for our appellate consideration.

After the filing of these appeals, Blue Shield filed a motion to suspend the order pending a determination of the matter on the merits. The motion was granted by this Court subject to Blue Shield's filing of security in an amount approved by the Commissioner and conditional upon Blue Shield's prompt repayment to subscribers in the event that the ordered rate decrease was ultimately upheld.

On March 22, 1974, the Commissioner issued another order in which rate increases were granted to both Blue Cross and Blue Shield. Blue Shield's subsequent motion to release the bond filed under the previous suspension order was granted after both parties stipulated that the rate issue had been mooted by the March 22 order.

We agree that the rate issues themselves have been mooted by the March 22 order granting superseding rate increases to both Blue Cross and Blue Shield. This conclusion, however, does not entirely dispose of the instant appeal. We cannot agree with the Commissioner's argument that the supplemental orders enumerated above were similarly mooted by the March 22 order. Although that order addressed the same issues as the supplemental orders of May 14, for the most part it merely reiterated those earlier directives and in no way deprived them of their operative effect. Were we to accept the Commissioner's mootness contention here, appellate review of such issues could forever be denied by the simple reissuance of the Commissioner's mandates under the guise of "new" orders. We hold that the challenged supplemental orders present justiciable issues for our consideration.

Blue Cross is a nonprofit hospital service corporation incorporated in New Hampshire and authorized to do business in Vermont under 8 V.S.A. § 4513. Blue Shield is a nonprofit medical service corporation incorporated in New Hampshire and authorized to do business in Vermont under 8 V.S.A. § 4593. The hearings preceding the issuance of the May 14 order were conducted before both the Vermont and New

Hampshire Commissioners of Banking and Insurance, and the New Hampshire Commissioner issued an order identical to that issued by the Vermont Commissioner.

We must determine at the outset whether the Commissioner was acting within the scope of his authority in issuing the challenged supplemental orders. The New Hampshire Supreme Court, in responding to separate appellate challenges presented by Blue Cross and Blue Shield to the identical order issued by the New Hampshire Commissioner, concluded that under the New Hampshire statutory scheme, their Commissioner did not exceed his authority either in setting the actual rates established in the May 14 order or in issuing the supplemental orders. *New Hampshire-Vermont Hospitalization Service* v. *Whaland,* 315 A.2d 191 (N.H. 1974); *New Hampshire-Vermont Physician Service* v. *Durkin,* 313 A.2d 416 (N.H. 1973). It is important to note, however, that the New Hampshire laws provide the Commissioner with the authority to: (1) employ an actuary to assist in the determination of "proper" rate levels, N.H.R.S.A. 420: 6; (2) make rules and regulations "for, or as an aid to, the administration or effectuation of any provision or provisions of this title, and such other rules and regulations as are reasonably necessary to implement the provisions of this title", N.H.R.S.A. 400-A: 15 I (Supp. 1972); and (3) license those corporations which have demonstrated that they are "safe, reliable, and entitled to public confidence", N.H.R.S.A. 420: 3 (Supp. 1972). The New Hampshire court placed special reliance on these broad provisions in ruling that the Commissioner had acted consistent with the authority conferred upon him.

The authority granted to the Vermont Commissioner has a considerably narrower statutory basis. 8 V.S.A. § 4513 forbids a hospital service corporation doing business in this State from entering into a contract with a subscriber until it has obtained a permit from the Commissioner to do so. The Commissioner may refuse such a permit if he finds that the rates submitted are "excessive, inadequate, or unfairly discriminatory." The same standard is employed in determining whether a similarly required permit should issue to a nonprofit medical service corporation under 8 V.S.A. § 4584. No contract may be issued a medical service subscriber which is different from that filed with the Commissioner at the time such a per-

mit was issued unless it has been approved by the Commissioner. 8 V.S.A. § 4587. In recognizing the independent rate-regulating authority of the Vermont Commissioner over a non-profit hospital service corporation doing business in Vermont, this Court recently noted the Commissioner's limited authority to "examine proposed contracts with the right to refuse a permit for their use if he finds the rates therein to be excessive, inadequate, or unfairly · discriminatory." *In re New Hampshire-Vermont Hospitalization Service,* 132 Vt. 66, 69, 313 A.2d 6 (1973).

██  We have found nothing either in the statutes or our case law which can reasonably be construed as expanding the passive power of approval and disapproval defined above into the active authority indicated by the challenged supplemental orders. A public administrative authority has only such powers as are expressly granted by the Legislature, together with those implied as necessary for the full exercise of those granted. *Trybulski* v. *Bellows Falls Hydro-Electric Corporation,* 112 Vt. 1, 7, 20 A.2d 117 (1941). See also *In re Lake Sadawga Dam,* 121 Vt. 367, 370, 159 A.2d 337 (1960). We do not find the power exercised by the Commissioner to be impliedly necessary for the full exercise of his expressly granted authority. Where the Legislature has intended that such affirmative authority be exercised by an administrative body, it has specifically so stated. Under 30 V.S.A. § 218, for example, the Legislature has expressly authorized the Public Service Board, when it has found after hearing that rates, tolls, charges, or schedules are unjust, unreasonable, or unjustly discriminatory to

> order and substitute therefor such rates, tolls, charges or schedules, and make such changes in any regulations, measurements, practices or acts of such company relating to its service, and may make such order as will compel the furnishing of such adequate service as shall at such hearing be found by it to be just and reasonable.

In issuing directives which attempted to control aspects of contract coverage and the composition of the Boards of Directors, the Commissioner clearly exceeded his statutory authority, and the challenged supplemental orders must be vacated. The Commissioner's regulatory authority should not

obtrude itself into the place of management. See *Petitions of New England Tel. and Tel. Co.*, 116 Vt. 480, 501, 80 A.2d 671 (1951).

*The supplemental orders issued by the Commissioner of Banking and Insurance affecting each appellant are vacated and held for naught.*