## New Hampshire-Vermont Hospitalization Service v. Commissioner, Department of Banking and Insurance

[339 A.2d 453]

No. 126-74

Present: Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.

Opinion Filed May 8, 1975

334

*Paterson, Gibson, Noble & Brownell,* Montpelier, for Plaintiff.

*M. Jerome Diamond,* Attorney General and *James E. Hirsch, Esq.,* Assistant Attorney General, Montpelier, for Defendant.

**Larrow, J.** This is an appeal by New Hampshire-Vermont Hospitalization Service (Blue Cross) from Findings and Orders of the Vermont Commissioner of Banking and Insurance issued March 22, 1974. In his order, the Commissioner granted Blue Cross an overall increase in its basic rates, effective May 1, 1974, the amount of which is not here challenged. This appeal puts in issue the Commissioner's authority to make supplemental orders as to "cost containment responsibilities" and "supplemental areas", and to condition continuance of the granted increase beyond a one-year period upon "implementation and ongoing compliance" with these orders. Appellant urges that the orders in question are beyond the scope of the Commissioner's authority, as generally outlined in the case of the same name reported in 132 Vt. 592. With one exception, we agree.

The parties concur that the orders in question are fourteen in number, although not so clearly delineated in the Findings and Conclusions. For future guidance, we would strongly recommend that findings and conclusions be numbered for reference, and separated, so that they may be more logically considered and dealt with.

Four of the directives in question are so clearly violative of our previous holding (handed down after the decision here in question) that even the Commissioner acknowledges them to be insupportable. They direct Blue Cross to keep the Commissioner advised of negotiations with hospitals and to provide for input by him in those negotiations, to put into

operation an optional monthly payment plan, to make full semi-private coverage available to non-group subscribers, and to offer specified coverages to persons not eligible for major medical coverage. The Commissioner concedes, on argument, that these provisions "could possibly be deemed to be within the discretionary managerial function of Blue Cross," and that he "would" withdraw them, although he has not revised his order to do so. Since substantially similar provisions were held to be clearly beyond his statutory authority in our previous decision, we do not consider these provisions further. We vacate them, as the Commissioner should have done.

A brief summary of the other orders complained of is difficult, because of their intricate nature. One, which we consider separately, finds it unreasonable and discriminatory for Blue Cross to continue to sell indemnity contracts of less than $20.00 per day. The specific content of this order is not separately challenged, and we must therefore assume that it has factual basis. With such basis, it is within the clear purview of 8 V.S.A. § 4513, allowing the Commissioner to refuse a permit to enter into a contract found to be "excessive, inadequate or unfairly discriminatory." This particular order, as contained in the third paragraph of II(A) of the Findings, is sustained.

Nine other supplemental orders, not separately designated and scattered at random throughout the Findings, deal with assorted topics. In varying manner, Blue Cross is directed to perform and file feasibility studies, monthly summaries of business gained and lost, a plan for experience rating, a utilization review for cost control, and a report on prospective reimbursement, to review and seek improvements in hospital budgets, to file a report on waivers of pre-existing conditions exclusions, and to move forward "as rapidly as possible" on full plans for merger with Blue Shield. Blue Cross is further directed to reject increases in costs from providers until they are adjusted to the lowest reasonable level of payment.

Appellant does not urge upon us that all of these directives are without merit. Some it is complying with, and would have complied with without mandate. But it does claim, we think correctly, that they are beyond the then existing statutory authority of the Commissioner as delineated in our previous opinion, that they are not advisory but mandatory, and

that in many instances they are so vague and general that certainty of compliance is unattainable.

Appellee urges upon us three general grounds for supporting the provisions complained of. The first is that they are within the Commissioner's power to "urge" management to operate as efficiently as reasonably possible; the second that the requisite power is "implied" and "inherent" in his quasi-judicial regulatory authority; the third that they are specifically authorized by statute. We treat these asserted grounds in the above sequence.

Consistently, the Findings employ the words "order" and "direct". In their ordinary context, these words go far beyond the concept of "urging." They are mandatory, not hortatory. But, even apart from this, the Order concludes by granting one year rate increases "contingent upon the Plans taking adequate steps to meet the orders and requirements enumerated in this decision." Further, in the Conclusions, the rate increases are made for one year only from May 1, 1974, and "are expressly made subject to the Plans' implementation and ongoing compliance with the orders embodied in the Findings above." Even without the quoted mandatory words, the clear imposition of sanctions for noncompliance would make the directives mandatory. Appellee's argument on this point is without merit.

The argument that the directives are supported by powers "implied" or "inherent" in the quasi-judicial regulatory authority of the Commissioner was, we thought, laid to rest in the concise opinion of Justice Keyser in the previous litigation.

> We have found nothing either in the statutes or our case law which can reasonably be construed as expanding the passive power of approval and disapproval defined above into the active authority indicated by the challenged supplemental orders. A public administrative authority has only such powers as are expressly granted by the Legislature, together with those implied as necessary for the full exercise of those granted. 132 Vt. 592, 596, 326 A.2d 163 (1974).

The concept of the Commissioner's role in the regulatory process is governed by statutory enactments, as interpreted by this

Court. He asserts that his "duty and responsibility" is the "needs and hopes of the subscribers of Vermont to obtain a dollar's worth of health and physician services in these difficult times." The objective is indeed praiseworthy, but it does not follow that the Legislature has, to attain it, entrusted to the Commissioner the prerogatives of management. Some of the orders could perhaps be upheld as consonant with due process if issued under statutory authorization, as in the case of the Public Service Board. 30 V.S.A. § 218. But, however utopian the goal, we are not free to legislate its attainment, and neither is the Commissioner.

The third general ground asserted for affirmance is express statutory authorization, despite our previous holding that none such exists. This is almost tantamount to a motion for reargument of the previous case, upon the frequent and unwarranted ground of disagreement with the decision. We are not inclined to expatiate at length upon the statutes in question. Suffice it to say that three chapters of Title 8, V.S.A., are referred to. Chapter 129, relating to insurance trade practices, is claimed to be relevant because of amendments to make it applicable to hospital service plans. The chapter deals with unfair trade practices, none of which the appellant is here accused of violating. It is inapplicable to the points in issue here. Beyond that, the quoted amendment to 8 V.S.A. § 4722 became effective May 1, 1974, more than a month *after* the order here in question issued. 1973, No. 216 (Adj. Sess.) § 2. Chapter 101 relates to examination of foreign insurance companies, and has no relevance to the issues here. Chapter 127 relates to insurance companies and rating organizations. It also has no relevance here, since, as our prior decision clearly pointed out, Blue Cross is not an insurance company, but a nonprofit hospital corporation, regulated under 8 V.S.A., Chapter 123, and in particular §§ 4513 and 4520. The cited amendment to 8 V.S.A. § 4722, even had it been in effect, would make Blue Cross subject to the provisions of Chapter 129, but has no applicability beyond the provisions of that chapter, not here pertinent.

We are in accord with appellant's contention that the orders and directives here in question, with the single exception of the one relating to sale of indemnity contracts of less than $20.00 per day, cannot be supported. The failure of the Commissioner to strike them, in light of our previous decision, appears to be

clear misinterpretation. We will accordingly vacate them here, and certify the matter down forthwith.

*Those directives and orders contained in the Findings, Conclusions and Order of the Commissioner of Banking and Insurance dated March 22, 1974, and designated as Nos. 2–14 inclusive in the briefs of the parties, are vacated. The Commissioner's direction that appellant's rate increases are subject to their implementation and ongoing compliance with them is vacated. The portion of the order designated as No. 1, relating to indemnity contracts of less than $20.00 per day, is affirmed. To be certified to the Commissioner of Banking and Insurance forthwith.*