## Marlene P. Davison d/b/a Ryder Brook Stables v. Morrisville Water & Light Department

[400 A.2d 989]

No. 149-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed April 3, 1979

*Robert P. Davison, Jr.,* of *Davison Associates, Inc.,* Stowe, for Plaintiff.

*Leslie C. Pratt* of *Paterson, Gibson & Noble,* Montpelier, for Defendant.

**Billings, J.** Plaintiff Marlene P. Davison, doing business as Ryder Brook Stables (Ryder Brook), appeals from an order of the Vermont Public Service Board (the Board) granting only partial relief on her petition for an adjustment and a rebate of charges imposed by the Morrisville Water and Light Department for relocating an electric transmission line on the Ryder Brook property, at plaintiff's request. We affirm.

Ryder Brook Stables, located in Morristown, Vermont, receives electric service from the Morrisville Water and Light Department (the Department). In November of 1975, the plaintiff consulted the Department about relocating a power line serving the Ryder Brook property, which was in the way of a planned extension to a horse barn ring. The Department provided an estimate of the cost of the relocation, in the amount of $3,882.50, using its usual method for figuring the cost of such services at the time. Plaintiff's attorney, on behalf of the plaintiff, signed a document obligating her to pay the estimated cost for the line relocation. The work was then performed, using new materials, and was completed in November of 1975. Plaintiff was charged the sum of $3,903.33, which included a credit for a percentage of the value of salvageable materials, plus interest in the amount of $605.07, to be paid to the Department over a five year period pursuant to a prior arrangement of the parties.

The original line was installed 27 years before the relocation. The Department uses a depreciation period of thirty years for electric lines. Thus, the original line had a book life of three years at the time it was removed. No finding was made as to the original line's actual remaining service life, if left undisturbed and maintained normally, although some evidence was introduced on the point.

In January of 1977, the Department reviewed its method of allocating its costs for line construction, and concluded that it was overcharging. As figured under the new method adopted by the Department, the cost of the Ryder Brook relocation was $2,124.88, before interest charges.

In April of 1977, the plaintiff filed a petition with the Public Service Board for an adjustment of costs and a rebate

in connection with the relocation. A hearing was held, at which the plaintiff urged that the cost should be adjusted downward, first, because the basic cost charged by the Department for the services was excessive, and second, because Ryder Brook should not have to bear more than ten percent of the cost of the relocation, since the line was already ninety percent depreciated on the books of the Department. The Board agreed with the plaintiff on her first point, and entered an order adjusting the charge for the relocation to $2,124.88, plus interest. The Board concluded that the book depreciation on the line prior to relocation had no relevance in calculating the cost of a relocation which is made at the request, and for the sole convenience, of a customer.

Under the Department's tariff, duly filed with the Board, a service relocation is defined as any change in the location of a service facility requested by the customer which results in a one-time cost or expense to make the change. The tariff provides that all costs associated with a service relocation shall be borne by the requesting party. There is no question but that the charge for the relocation was imposed in accordance with this tariff.

█ The Board has jurisdiction to review the rates, charges, and service practices of regulated companies to ensure that customers are not being treated unreasonably, discriminatorily, or otherwise unlawfully. 30 V.S.A. §§ 209, 218. This Court has long recognized, however, that the function of a public service commission is that of control and not of management, and that regulation should not obtrude itself into the place of management. *Bacon* v. *Boston & Maine R.R.*, 83 Vt. 421, 442–44, 76 A. 128, 137–38 (1910); cited in *Petition of New England Tel. & Tel. Co.*, 115 Vt. 494, 510–11, 66 A.2d 135, 145 (1949). In *Carpenter* v. *Home Telephone Co.*, 122 Vt. 50, 163 A.2d 838 (1960), Justice (now Chief Justice) Barney wrote:

> We would agree that there is in the Public Service Commission a broad authority to deny to regulated companies the right to subject their customers to unreasonable, arbitrary or discriminatory rate or service practices. . . . There are broad limits, however, within which the regulated company is permitted and expected to

exercise freely its proper managerial competence. . . . Otherwise permissible actions of a company become unlawful only when they pass the recognized bounds of operational management and overstep the limits of reasonableness.

*Id.* at 52–53, 163 A.2d at 841.

██ The tariff in issue is not discriminatory. We cannot say that it is arbitrary or even unreasonable as a matter of law, and therefore will not reverse the Public Service Board, which has substantial experience and expertise in this area. There was undisputed evidence adduced at the hearing indicating that the lines in issue had a service life extending a number of years past the point when they would have been depreciated down to no value for bookkeeping and tax accounting purposes. There was also uncontroverted testimony that it is generally more costly to relocate a line than to rebuild one in its previous location, using new materials in each case.

In the case at bar, not only did the plaintiff freely enter into a specific contract to pay for the entire cost of relocation, but the tariff filed by the Department requiring one hundred percent payment of the cost of a relocation requested by the customer is within the Department's properly approved service practices.

*Affirmed.*