# In re Vermont Health Service Corporation

[482 A.2d 294]

Nos. 83-199 and 83-385

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed August 3, 1984

*Julian R. Goodrich* and *Barbara M. Prentice* of *Gibson, Noble & Goodrich,* Montpelier, for Plaintiff-Appellant.

*John J. Easton, Jr.,* Attorney General, and *Gretchen Babcock* and *John S. Monahan,* Special Assistant Attorneys General, Montpelier, for Defendant-Appellee.

*Richard T. Cassidy* of *Hoff, Wilson, Powell & Lang, P.C.,* Burlington, for Defendant-Appellee Friends of Health Care, Inc.

**Billings, C.J.** This is an appeal by the petitioner-appellant, Blue Cross/Blue Shield of Vermont (hereinafter Blue Cross), from certain findings of fact and orders issued by appellee,[*] the Commissioner of Banking and Insurance (commissioner), pursuant to the authority vested in the commissioner under chapters 123 and 125 of Title 8, Vermont Statutes Annotated. In June, 1982, Blue Cross filed a petition with the commissioner requesting an aggregate rate increase of approximately 30% in its basic, major medical and comprehensive coverage for group and nongroup services. The commissioner held hearings on the rate request in July, 1982, and on August 30, 1982, issued his decision denying the rate increase. Additionally, in connection with his rate decision, the commissioner issued four supplemental orders. 8 V.S.A. § 4513(b). These orders required Blue Cross to: (1) submit a timetable for compliance with orders (2), (3) and (4); (2) reform its contracts with as many participating hospitals as possible "but in no event less than the number representing 50% of hospital reimbursement payments," within 120 days of the order date "in order to provide

---

[*] Appellee Friends of Health Care, Inc., was permitted to participate in the proceedings before the commissioner as a representative of a community-rated group subscriber and an individual nongroup subscriber.

stronger financial incentives for provider economy and efficiency." To accomplish this, the reformed contracts were to include methods for defining and testing the reasonableness of hospital costs and of ancillary hospital services, selective contracting procedures designed to eliminate reimbursement for unnecessary or inefficient hospital services, and experience reporting data; (3) develop a method for subscriber and public and private agency input in the contract reformation process, as well as allow an observer from the commissioner's office to attend the contract negotiations between the petitioner and participating hospitals; (4) reconstitute its board of directors so that a majority of the board were members of the general public who did not derive any income from the delivery of health services or supplies.

In January, 1983, Blue Cross requested that the commissioner modify supplemental orders (2) and (3) "on the grounds that compliance with these orders have [sic] proven to be impossible and impracticable." New hearings were held on Blue Cross's modification request in February, 1983. On March 31, 1983, the commissioner issued his decision granting modification of supplemental orders (2) and (3). Respecting order (2), the commissioner ordered Blue Cross to reform or cancel its contracts with all participating hospitals no later than October 1, 1983, for October 1 fiscal year hospitals, and no later than December 31, 1983, for all others. Blue Cross was to submit proposed contract language to the commissioner for review and was to incorporate any modifications requested by the commissioner after review, or submit substantiated reasons why the requested modifications could not be incorporated into its contracts. Additionally, Blue Cross was to assign sufficient staff, and, if necessary, hire additional personnel to conduct comparison budget reviews of participating hospitals' reimbursable costs; develop proposals for economic risks and incentives to encourage efficiency and cost savings; and incorporate into the reformed contracts a system of utilization review to insure that Blue Cross was only reimbursing for necessary and actual services.

With respect to supplemental order (3), the commissioner deleted the requirement that a representative from his office attend the contract negotiation sessions between Blue Cross and participating hospitals. Instead, the commissioner pro-

vided that he would review all proposed reformed contracts before they were entered into to insure compliance with existing statutes, regulations and previous orders issued by him.

On April 29, 1983, Blue Cross initiated an appeal in this Court from both the August 30, 1982, and March 31, 1983, orders. V.R.A.P. 13; 3 V.S.A. § 809. Notwithstanding its appeal, in June, 1983, Blue Cross submitted a proposed hospital contract to the commissioner for his review, as provided for in the commissioner's March 31, 1983, modified supplemental order (3). On July 25, 1983, the commissioner issued a "response" to the proposed contract. On August 3, 1983, Blue Cross initiated another appeal in this Court from the commissioner's July 25 order. V.R.A.P. 13; 3 V.S.A. § 809. On November 17, 1983, this Court granted the commissioner's motion to consolidate both appeals. V.R.A.P. 3(c).

■ Blue Cross's first argument on appeal is that the findings of fact issued by the commissioner in connection with both his August, 1982, and March, 1983, orders are not supported by competent and substantial evidence, as required by 8 V.S.A. § 4513(b). We are reminded by appellee Friends of Health Care, Inc., however, that on November 9, 1983, this Court granted the commissioner's motion to dismiss Blue Cross's appeal of the August 30, 1982, order for being out of time. V.R.A.P. 4. Accordingly, we are without jurisdiction to consider either the sufficiency of the evidence supporting the August 30 findings of fact, or the findings themselves. *R. Brown & Sons, Inc.* v. *International Harvester Corp.*, 142 Vt. 140, 142–43, 453 A.2d 83, 85 (1982) ; *State* v. *Savo*, 136 Vt. 330, 330–31, 388 A.2d 391, 392 (1978).

Given the unappealability of the August 30, 1982, order, Blue Cross's brief refers us to only two "findings" from the March 31, 1983, order that, it is contended, are not supported by the evidence. A review of the commissioner's March 31 findings and conclusions, however, leads us to believe that Blue Cross in fact takes issue with only one finding. The other contested "finding" is more accurately a conclusion based upon the finding faulted by Blue Cross. This confusion as to what are findings and what are conclusions could be avoided in the future if the commissioner would clearly delineate his findings and conclusions with separate numbers and paragraphs. See 3 V.S.A.

§ 812 (a) (final decision "shall include findings of fact and conclusions of law, *separately stated*") (emphasis added).

In his March 31, 1983, order, the commissioner found that Blue Cross's inability to comply with supplemental order (2) within the 120-day time period stemmed from the fact that Blue Cross had assigned only one staff member to the budget review procedure, which was the first step in the renegotiation process. Based on this finding, the commissioner concluded that Blue Cross's "failure to achieve contract reform within 120 days as required by the order was the result of . . . its own lack of due diligence." Blue Cross argues that this finding flies in the face of testimony, elicited during the February, 1983, hearings, that the one employee assigned to the budget review process "was supported by considerable staff" and resources from various other departments within the Blue Cross organization.

■ Whether the commissioner's finding is right or wrong, we fail to see how Blue Cross is harmed by it. Although the commissioner concluded, based on this finding, that timely failure to reform its contracts was due to its own lack of diligence, he nevertheless modified his original order and extended the time for compliance. The finding, if error, was harmless. *Town of Lyndon* v. *Burnett's Contracting Co.*, 138 Vt. 102, 107, 413 A.2d 1204, 1206 (1980) ; *Hogel* v. *Hogel,* 136 Vt. 195, 197–98, 388 A.2d 369, 370 (1978) ; *East Montpelier Development Corp.* v. *Barre Trust Co.,* 127 Vt. 491, 494, 253 A.2d 131, 134 (1969).

Blue Cross next argues that the commissioner's supplemental orders of March 31, 1983, represent an unlawful intrusion into its internal management decision-making prerogatives. See, e.g., *In re New England Tel. & Tel. Co.,* 115 Vt. 494, 510, 66 A.2d 135, 145 (1949) (regulation should not obtrude into management). The March 31, 1983, orders required the renegotiation of Blue Cross participating hospital contracts to the end that enumerated hospital cost containment incentives were specifically addressed. Additionally, the order required the commissioner's prior approval of the reformed contract language.

■ We have previously stated the rule that, absent compelling indication of error, interpretations of statutory provi-

sions by the administrative body responsible for their execution will be sustained on appeal. *In re Desautels Real Estate, Inc.*, 142 Vt. 326, 336, 457 A.2d 1361, 1366 (1982).

The enabling legislation for nonprofit hospital service corporations, such as Blue Cross, is contained in chapter 123 of Title 8, Vermont Statutes Annotated. Section 4512 (a) provides that a nonprofit hospital service corporation "shall be maintained and operated solely for the benefit of the subscribers thereof . . . ." Under § 4513 (a), a hospital service corporation may not enter into any subscriber contract without first obtaining a permit from the commissioner. The commissioner may deny a permit "if he finds that the rates [to be charged to the subscriber] are excessive, inadequate or unfairly discriminatory."

> In connection with a rate decision, the commissioner may also make reasonable supplemental orders to the corporation and may attach reasonable conditions and limitations to such orders as he finds, on the basis of competent and substantial evidence, necessary to insure that benefits and services are provided at minimum cost under efficient and economical management of the corporation. The commissioner shall not set the rate of payment or reimbursement made by the corporation to any physician, hospital or other health care provider.

8 V.S.A. § 4513 (b).

Section 4513 (b), cited above, was added, by amendment, effective April 18, 1975. 1975, No. 69, § 2. Prior to the addition of § 4513 (b), the authority of the commissioner was limited to approving or denying rate requests. 8 V.S.A. § 4513 (amended 1975, No. 69, § 2) ; *New Hampshire-Vermont Hospitalization Service* v. *Commissioner*, 133 Vt. 333, 336–37, 339 A.2d 453, 455 (1975) ; *New Hampshire-Vermont Physician Service* v. *Commissioner*, 132 Vt. 592, 596, 326 A.2d 163, 165–66 (1974).

In *New Hampshire-Vermont Hospitalization Service* v. *Commissioner, supra,* decided after the effective date of § 4513 (b) but grounded on the state of the law as it was prior to § 4513 (b)'s effective date, the commissioner, in addition to granting a rate increase to Blue Cross, issued a number of supplemental orders respecting hospital cost containment procedures. *Id.* at 334, 339 A.2d at 454. This Court, while praising

the motivations of the commissioner in attempting to lower health care costs, nevertheless vacated the supplemental orders. We ruled that the statute only permitted rate regulation, not "the prerogatives of management." *Id.* at 336–37, 339 A.2d at 455.

In construing the effect of the addition of § 4513 (b) on the authority of the commissioner, we are guided by the rule of construction that "an amendment of [a] statute shows a legislative intent to change the effect of existing law." *Montgomery* v. *Brinver Corp.*, 142 Vt. 461, 464, 457 A.2d 644, 646 (1983). We are mindful that costs for hospital care consume "a much higher percentage of the health care dollar than any other health service . . . ." and that "Blue Cross is the primary purchaser of hospital services." Brown, *State Regulation of the Nonprofit Health Insurance Industry At the Approach of National Health Insurance: Goals, Procedures and Rationale,* 36 Ohio St. L.J. 17, 18, 21 (1975) (hereinafter cited as *Health Insurance Regulation*). Additionally, by virtue of the enabling legislation of 8 V.S.A. §§ 4512–4513, Blue Cross is not a private business operating freely within the competitive marketplace; it is a quasi-public business subject to the regulation of the commissioner. The primary goal of that regulation is to ensure that Blue Cross is "maintained and operated solely for the benefit of the subscribers thereof . . . ." 8 V.S.A. § 4512 (a). Section 4512 (a) thus articulates a legislative purpose to entrust the public interest in obtaining reasonably priced hospital care to the protection of the commissioner. Through its contracts with participating hospitals Blue Cross determines both the cost efficiencies of the hospital budgets and the consumer's cost for hospital care. *Health Insurance Regulation, supra,* 36 Ohio St. L.J. at 20–29. If the commissioner's office is to fulfill its mandate of securing reasonably priced subscriber rates for hospital care, 8 V.S.A. §§ 4512–4513, then in considering the reasonableness of subscriber rates, it must have the regulatory means to oversee the contracting process in which those rates are determined. See *Health Insurance Regulation, supra,* 36 Ohio St. L.J. at 33 ("It is often impossible to make an intelligent analysis of the necessity of a rate increase without first examining the contractual relationships between the rate-charging regulatee and those suppliers from

which it acquires the components of its product."). We think that through the addition of § 4513(b), the legislature intended to provide the commissioner with the regulatory tools to achieve the supervisory authority over Blue Cross's contracting process which, prior to the addition of § 4513(b), we held was denied him. *New Hampshire-Vermont Hospitalization Service* v. *Commissioner, supra,* 133 Vt. at 336–37, 339 A.2d at 455. Section 4513(b) expressly provides that the commissioner may issue reasonable supplemental orders designed to "insure that benefits and services are provided at minimum cost *under efficient and economical management of the corporation."* 8 V.S.A. § 4513(b) (emphasis added). Such language clearly expands the commissioner's authority beyond mere passive rate approval or disapproval. The supplemental orders that are issued by the commissioner must be issued in connection with a rate decision, be based on competent and substantial evidence, and be reasonable. 8 V.S.A. § 4513(b). Given that the statutory purpose of a supplemental order is "to insure that benefits and services are provided at minimum cost," the reasonableness of a particular order must be viewed within this context. See, e.g., *Davison* v. *Morrisville Water & Light Department,* 137 Vt. 120, 122, 400 A.2d 989, 990 (1979) (public service board may review "rates, charges, and service practices of regulated companies to ensure that customers are not being treated unreasonably . . . .") ; *Carpenter* v. *Home Telephone Co.,* 122 Vt. 50, 53, 163 A.2d 838, 841 (1960) ("Otherwise permissible actions of a company become unlawful only when they pass the recognized bounds of operational management and overstep the limits of reasonableness.").

Blue Cross does not, however, argue that the March 31, 1983, order (2) was not based on "competent and substantial evidence," nor does it take issue with the reasonableness of the order. Blue Cross only contests the commissioner's authority to issue such an order. Based on what we have said above, we hold that the commissioner was acting within the statute's mandate when he issued the March 31, 1983, supplemental order (2).

A contrary holding would, we think, place the commissioner in an untenable position. He would, on the one hand, be required to ensure that subscriber rates were not excessive, inadequate or unfairly discriminatory, and that benefits and

services were being provided at minimum cost, and yet, on the other, not have the means actively to bring this about. See *New Hampshire-Vermont Physician Service* v. *Durkin,* 113 N.H. 717, 723, 313 A.2d 416, 420–21 (1973); *Thaler* v. *Stern,* 44 Misc. 2d 278, 288–89, 253 N.Y.S.2d 622, 633 (Sup. Ct. 1964); Corn & Shkurti, *Insurance Regulation to Control the Rising Cost of Health Care: Ohio's New Blue Cross Law,* 663 Ins. L.J. 193, 201–06 (1978); Brown, *Rule Making By Adjudication in Rate-Making Proceedings—Some Notes on the Regulation of Blue Cross,* 604 Ins. L.J. 264, 272–74 (1973).

Blue Cross also appeals from the commissioner's July 25, 1983, directive, issued, without a prior hearing, after a review of a proposed hospital contract submitted to the commissioner by Blue Cross in accordance with the terms of the March 31, 1983, orders. Rather than delineate specific areas of fault with the July 25 directive, Blue Cross generally asserts that the July 25 order, like the March 31 order, exceeded the scope of the commissioner's authority. The commissioner asserts that the July 25 order was not a final order from which an appeal would lie. 3 V.S.A. § 815. Alternatively, the commissioner argues that if the July order is final, it is properly supported by competent and substantial evidence. 8 V.S.A. § 4513(b).

■ Addressing the commissioner's alternative argument first, we rule that, if the July 25 "order" is a final, supplemental order, 3 V.S.A. § 812; 8 V.S.A. § 4513(b), it is invalid. 3 V.S.A. § 812 of the administrative procedure act requires that a final order "shall include findings of fact and conclusions of law, separately stated." There were neither findings of fact nor conclusions of law appended to the commissioner's July 25 order.

■ The commissioner argues that the July 25 order was merely his response, with comments and suggested modifications, to the proposed hospital contract. We find, however, that the July 25 order contains more than simply comments and suggested modifications; a review of the order reveals ten "required modifications" to Blue Cross's proposed contract, in addition to a number of "other recommendations." The required modifications outlined in the July 25 order concerned substantive contract provisions involving hospital cost containment measures. Being mindful that the goal sought by Blue Cross

throughout these proceedings has been a rate increase, and that the commissioner has expressly found a direct relationship between "the adequacy or excessiveness of any subscriber rate proposal" and hospital "costs and efficiencies," it is reasonable to conclude that the required modifications to the proposed hospital contract would have to be made before Blue Cross could expect the commissioner's approval of its rate increase request. As such, we hold that the July 25 order was a contested case, 3 V.S.A. § 801, in which the commissioner made a determination of Blue Cross's legal duties pursuant to the terms of 8 V.S.A. § 4513. In a contested case, "all parties shall be given an opportunity for hearing . . . ." 3 V.S.A. § 809; 8 V.S.A. § 4513(b). Since no hearing was provided or held prior to the July 25 order, the order is invalid.

*The Commissioner of Banking and Insurance's findings of fact, conclusions of law and order, dated March 31, 1983, are affirmed. The Commissioner's order dated July 25, 1983, is vacated. To be certified to the Commissioner of Banking and Insurance forthwith.*