In re Vermont Health Service Corporation d/b/a/ Blue Cross and Blue Shield of Vermont Medicomp Rate Increase Application

[586 A.2d 1145]

No. 88-040

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

*James M. Vitt* of *Paterson & Walke, P.C.*, Montpelier, for Plaintiff-Appellant.

*Jeffrey L. Amestoy,* Attorney General, *William E. Griffin,* Chief Assistant Attorney General, and *Elizabeth R. Costle,* General Counsel, Department of Banking and Insurance, Montpelier, for Defendant-Appellee.

**Allen, C.J.** The Vermont Health Service Corporation (VHSC), doing business as Blue Cross and Blue Shield of Vermont, appeals from three supplemental orders of the Commissioner of Banking and Insurance issued in conjunction with her decision on VHSC's request for permission to increase rates. We affirm.

On May 28, 1987, VHSC filed a request for permission to increase its rates for Medicomp hospital and medical benefits coverage as required by 8 V.S.A. §§ 4513(b) and 4584(a). On November 19, 1987, the commissioner issued a decision and five supplemental orders as authorized by 8 V.S.A. § 4513(c).[1]

Before this Court is VHSC's appeal of three of those supplemental orders, requiring VHSC to conduct a study of administrative expense reduction and to report to the commissioner, to obtain the commissioner's prior approval for capital expendi-

---

[1] 8 V.S.A. § 4513(c) states in part:

> In connection with a rate decision, the commissioner may also make reasonable supplemental orders to the corporation and may attach reasonable conditions and limitations to such orders as he [or she] finds, on the basis of competent and substantial evidence, necessary to insure that benefits and services are provided at minimum cost under efficient and economical management of the corporation.

tures in excess of $250,000, and to properly credit subscribers for investment income in future rate filings.

## I.

██ VHSC first argues that all three supplemental orders violated 3 V.S.A. § 809[2] because it did not receive adequate notice or opportunity to prepare and respond to the subject matter of any of these orders, which it describes as "hidden issues." The proceeding before the commissioner was a "contested case" within the meaning of the Administrative Procedure Act, and required notice consistent with § 809. That provision is coterminous with the minimum standards of due process necessary for a fair proceeding. See *In re Hot Spot, Inc.*, 149 Vt. 538, 540–41, 546 A.2d 799, 801 (1988) (interpreting § 809(b)(4) as embodying general due process principles). For notice to be adequate, it is enough "that the parties be sufficiently apprised of the nature of the proceedings so that there is no unfair surprise." *North State Telephone Co. v. Alaska Public Utilities Commission*, 522 P.2d 711, 714 (Alaska 1974); see also *Savina Home Industries, Inc. v. Secretary of Labor*, 594 F.2d 1358, 1365 (10th Cir. 1979) ("As long as a party to an administrative proceeding is reasonably apprised of the issues in controversy, and is not misled, the notice is sufficient.").

██ VHSC initiated the present proceeding and by its filing defined the "matters at issue" within the meaning of 3 V.S.A. § 809(b)(4). Further, consideration of those issues necessarily assumed the possible imposition of § 4513(c) conditions and limitations. It is true that the agency notice only specified the time and place for the hearing and did not purport to explore the

---

[2] 3 V.S.A. § 809 states in part:
> (a) In a contested case, all parties shall be given an opportunity for hearing after reasonable notice.
> (b) The notice shall include:
> . . . .
> (4) a short and plain statement of the matters at issue. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter upon application a more definite and detailed statement shall be furnished.
> (c) Opportunity shall be given all parties to respond and present evidence and argument on all issues involved.

rate filing or to identify all possible issues it raised. Yet such a notice would not be feasible in a matter where objections to the filing, if any, would necessarily arise out of the testimony before the hearing officer. The original notice could not have anticipated the content of the supplemental orders, and consequently we do not find it inadequate for failure to do so. As we stated in *In re Hot Spot, Inc.*, 149 Vt. at 540, 546 A.2d at 801, "notice in an administrative proceeding need only be reasonable." See 3 V.S.A. § 809(a). It would be unreasonable to require the original notice to be as prescient as VHSC demands.

■ VHSC raises a parallel argument under § 4(g) of Department of Banking and Insurance Regulation No. 82-1, which requires that "requests for findings of fact and conclusions of law, if any, shall be filed within 20 days after hearing or . . . within 20 days after the date originally set for the hearing." VHSC contends that because of lack of notice, it was unable to request findings on the supplemental orders as provided by § 4(g). The argument would limit remedies fashioned by the commissioner to those specified in hearing notices—an argument that would strip the commissioner of all flexibility to tailor her remedies to the evidence. Moreover, VHSC was given, and exercised, the right to object to the commissioner's proposed orders in writing. Its views were considered by the commissioner prior to issuing her supplemental findings and order on November 25, 1987. In sum, § 4(g) was not violated.

■ ■ What remains to be explored, however, is whether each order was in fact based on issues fairly raised on the record and whether each is otherwise valid. As we recognized in *In re Green Mountain Power Corp.*, 131 Vt. 284, 293, 305 A.2d 571, 577 (1973), adequacy of an original notice does not end the inquiry. The fairness of the whole procedure must be in accord with due process principles. Crucial to the determination "is whether or not the parties were given an adequate opportunity to prepare and respond to the issues raised in the proceeding." *Id.*; see also 3 V.S.A. § 809(c). Even if the subject matter of the collateral orders issued by the commissioner was not a required part of the notice of proceedings, we must examine whether the subject matter of each supplemental order was practically and effectively communicated to VHSC, giving it a fair opportunity to respond and offer objections.

## II.

VHSC attacks the lack of due notice of, and opportunity to address, the subject matter contained in Supplemental Order 1, which states:

> BC/BS shall study ways to reduce or limit its administrative expense load for medicomp subscribers. BC/BS shall report its findings to the Commissioner within sixty (60) days.

The record of the proceedings reflects a continuing focus on the administrative expense load. VHSC itself introduced evidence that its administrative expenses had increased 49 percent in three years. It could not have been surprised that the commissioner issued a supplemental order directing it to study ways of reducing or limiting these expenses. As VHSC itself admits, administrative expenses were among six "component parts" forming the commissioner's decision criteria. On September 17, 1987, the hearing officer submitted a proposed decision and order for the commissioner's consideration, which included a proposal that VHSC study and report on ways to reduce its administrative expenses. VHSC did not argue that the record before the hearing officer was devoid of evidence bearing on administrative expenses, but it filed exceptions to the proposal on other grounds, and on November 19, 1987, the commissioner issued supplemental findings to the effect that administrative expenses had "increased dramatically in a relatively short period of time" and that a study of ways to reduce these expenses was needed. Having filed written exceptions, VHSC did not request further oral argument on the subject of administrative expenses.

By the date of the issuance of Supplemental Order 1, VHSC had ample warning that the commissioner might act to require at least a consideration of means to reduce administrative costs. Further, VHSC had ample opportunity not only to defend its record on administrative costs, but also to negate the basis on which the commissioner might order the investigation of further efforts in that direction. Consequently, VHSC's contention that it did not have an opportunity to address the subject matter of Supplemental Order 1 is not persuasive.

■ VHSC also argues that the supplemental order improperly stepped on management prerogatives. The order sought to effect a reduction in VHSC's administrative expense burden—a burden that directly affects the profitability of operations and is integral to the goal set forth in 8 V.S.A. § 4513(c) of "efficient and economical management." Such an intrusion upon management is authorized. See *infra* at 464, 586 A.2d at 1149.

The order was proper and shall stand.

## III.

VHSC next challenges the validity of Supplemental Order 2, which states:

> The financial condition of BC/BS dictates that it shall not undertake any capital expenditure over $250,000 without the prior written approval of the Commissioner.

VHSC essentially argues that no evidence supported issuance of the order and that, in any case, it invaded the prerogatives of management.

We do not agree. There was undisputed evidence before the commissioner that VHSC had a negative reserve position of $5 million and was technically insolvent, that it had lost $9.6 million in the past two years, and that another loss would ensue for 1987. In light of such a fragile debt position, large capital expenditures were very likely to have a major impact on VHSC's financial condition, and would ultimately affect the plan's subscribers. Thus, this supplemental order was reasonable and necessary to "insure that benefits and services are provided at minimum cost under efficient and economical management." 8 V.S.A. § 4513(c).

■ VHSC claims that the evidence does not support this particular response to the financial weakness of VHSC. This objection misperceives our role. Once we establish that the commissioner's action is supported by the evidence, we do not second-guess the method she chooses while acting within her area of expertise. See *Consumer Credit Ins. Ass'n v. State*, 149 Vt. 305, 308, 544 A.2d 1159, 1161 (1988). Deference will be given to an agency's fashioning of a remedy to address the underlying problem and policy. *In re Handy*, 144 Vt. 610, 613, 481 A.2d 1051, 1053 (1984). The consequences of fiscal insolvency on

claims payments and on the maintenance of VHSC's subscribers' health could be major. The commissioner had the authority to address those dangers in the manner that she did.

■ VHSC argues that "it is for management to decide whether or not to make a capital expenditure," citing *New Hampshire-Vermont Physician Service v. Commissioner*, 132 Vt. 592, 596–97, 326 A.2d 163, 166 (1974). The legislature enacted 8 V.S.A. §§ 4513(c) and 4584(c) to overrule *New Hampshire-Vermont Physician Service. In re Vermont Health Service Corp.*, 144 Vt. 617, 625, 482 A.2d 294, 298 (1984). The fact is that §§ 4513(c) and 4584(c) now specifically authorize, if not require, the commissioner to interpose her regulatory authority into the "place of management" and to intervene in order to insure that benefits and services are provided at minimum costs under "efficient and economical management of the corporation." Without the authority to issue supplemental orders, she would clearly "not have the means actively to bring this about." *Id.* at 625–26, 482 A.2d at 298.

Finally, this order is simply an approval requirement. There is no reason to believe that the commissioner will disapprove reasonable capital expenditures. Until such time as the commissioner disapproves a capital expenditure, an attack on the order is premature.

## IV.

Finally, VHSC attacks the commissioner's authority to issue Supplemental Order 5, which states:

> In all future rate filings, BC/BS shall properly credit subscribers for investment income.

In addition to claiming lack of notice, VHSC's attack on Supplemental Order 5 is based on the purported ambiguity of the order, which is said to contain "absolutely no guidelines ... as to the manner in which subscribers are to [be] credited for investment income in future filings." VHSC also contends that if the supplemental order is meant to apply to all future rate filings, rather than future Medicomp filings, then the order is beyond the scope of the proceeding and "is a de facto rule."

Both arguments are based on the assumption that Supplemental Order 5 sets new policy or establishes new regulatory

norms. Neither assumption is true. The commissioner believed as a result of the evidence before her that VHSC has not *properly* credited subscribers with investment income. We agree with VHSC that the scope of the commissioner's concern is not clear from the order, nor are particulars offered as to how to implement proper crediting. But neither omission is fatal. Supplemental Order 5 is little more than an exhortation to VHSC to do a better job on a specific aspect of its duty of assessing all income and expenses in order to avoid rates that are "excessive, inadequate or unfairly discriminatory" within the meaning of 8 V.S.A. § 4513(b) and to promote the "efficient and economical management of the corporation" under 8 V.S.A. § 4513(c).

The requirement of including investment income in future rate filings is little more than a reminder to VHSC of the broad and general accounting principles that already apply to VHSC's rate filings. Should VHSC have specific questions about the nature of the accounting procedures required to place its current practices in conformity with the norm suggested by the supplemental order, those questions would be best addressed in the context of specific future filings rather than in the present action. The order in its current form invades no protected interest of VHSC and will stand.

*Affirmed.*