Milnes v. Blue Cross and Blue Shield of Vermont

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of May, two thousand fourteen.

PRESENT:
> ROBERT A. KATZMANN,
> > *Chief Judge*,
> ROBERT D. SACK,
> > *Circuit Judge*,
> JED S. RAKOFF,
> > *District Judge*.[*]

_____

WILLIAM R. MILNES, JR.,

> *Plaintiff-Appellant*,

v.                                                                No. 13-1748


BLUE CROSS AND BLUE SHIELD OF
VERMONT,

> *Defendant-Appellee*.

_____

_____

> [*] The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

For Plaintiff-Appellant:     DAVID M. POCIUS (John T. Sartore, *on the brief*),
                             Paul Frank + Collins P.C., Burlington, VT.

For Defendant-Appellee:      R. JEFFREY BEHM (Debra L. Bouffard, *on the brief*),
                             Sheehey Furlong & Behm P.C., Burlington, VT.

Appeal from the United States District Court for the District of Vermont (Murtha, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be and is hereby **AFFIRMED**.

Plaintiff-Appellant William R. Milnes, Jr., appeals from a March 28, 2013 judgment entered pursuant to memorandum decision and order issued the same day by the United States District Court for the District of Vermont (Murtha, *J.*). The district court granted the motion of defendant Blue Cross and Blue Shield of Vermont ("BCBS") for summary judgment and denied Milnes's cross-motion for summary judgment. We assume the parties' familiarity with the underlying facts and procedural history, to which we refer only as necessary to explain our decision. For the reasons that follow, we affirm the grant of summary judgment in the defendant's favor on alternative grounds.

This appeal arises from BCBS's breach of its 2008 agreement with Milnes, BCBS's retiring CEO, to pay Milnes earned but unpaid short- and long-term incentive compensation over three years following his retirement from BCBS (the "2008 Agreement"). The 2008 Agreement provided that Milnes would be paid this incentive compensation notwithstanding his departure from BCBS before the incentive compensation became "payable" under his preexisting employment agreement.

2

In the year of his departure, Milnes separately received payments of approximately $7.3 million from BCBS, comprising a lump-sum payout of supplemental retirement benefits, and salary and incentive compensation of $883,360. The payment of more than $7 million to Milnes during 2008 attracted the interest of BCBS's regulator, the Vermont Department of Banking, Insurance, Securities, and Health Care Administration ("BISHCA"). Following an investigation and the issuance of an order to show cause, the Commissioner of BISHCA found that a portion of Milnes's compensation between 2001 and 2008 was excessive "as a matter of law," insofar as it was "greater than required to manage and operate the Company solely for the benefit of subscribers, providing benefits at minimum cost under efficient and economical management." J.A. 55–56 (citing Vt. Stat. Ann. tit. 8, §§ 4512(a), 4513(c) & 4584(c)). The Commissioner's factual findings noted that the incentive compensation program was "flawed," concurring with an independent consultant that the incentive program permitted "payments in excess of 100% of the performance target," and that "the incentive program . . . paid out at or above target more frequently than would be expected." J.A. 50.

Notwithstanding these findings, BISHCA's order acknowledged that "there may be legal considerations that might bear on the potential for recovery of the excessive compensation paid to Mr. Milnes," and therefore permitted BCBS to determine whether "the likelihood of recovery does not warrant the expenditure of funds for the legal services necessary to seek recovery." *Id.* at 57. Should BCBS conclude that the costs of seeking to recover the already-paid compensation

3

exceeded the likely recovery, BISHCA required BCBS to "fashion some other remedy to make subscribers whole for the excessive compensation awarded to Mr. Milnes." *Id.*[2]

Rather than to seek recovery from Milnes, BCBS elected to hold its subscribers "harmless" by reducing the subscribers' premiums and drawing down its reserves. BCBS did, however, elect to breach its 2008 Agreement with Milnes to pay *additional* incentive compensation when those amounts became due. BCBS explained to Milnes that the large distribution to him in 2008 "ha[d] attracted the attention of [BISHCA]" and that the BCBS board "believe[d] there is significant risk that any further payments to [Milnes], such as the post-retirement payments, would be considered a violation of [its statutory] obligation" to operate at a minimum cost under efficient and economical management. J.A. 96. The instant lawsuit ensued.

Milnes seeks damages from BCBS for, *inter alia*, its breach of the 2008 agreement to pay him additional, post-retirement, incentive compensation in the amount of $580,136.00. On summary judgment, BCBS raised the defenses of impracticability and unenforceability on public policy grounds. Without reaching the defense of impracticability, we agree with BCBS that its 2008 Agreement with Milnes is unenforceable in light of BISHCA's determination that the incentive compensation system on which the payments to Milnes were based caused BCBS to compensate Milnes in violation of Vermont law.[3]

---

[2] We note that in 2012, Vermont amended the relevant statute to expressly empower the Commissioner to "order a person to make restitution or provide disgorgement of any sums shown to have been obtained in violation of provisions of this title [i.e., the Banking and Insurance law] . . . plus interest at the legal rate." 2012 Vt. Acts & Resolves 57 (enacting Vt. Stat. Ann. tit. 8, § 13(d)).

[3] While the district court did not reach the public policy defense below, we exercise our discretion to consider the issue nonetheless. Among the considerations that motivate us to reach

4

Vermont takes its definition of the defense of unenforceability on public policy grounds from section 178 of the Restatement (Second) of Contracts. *See Lang McLaughry Spera Real Estate, LLC v. Hinsdale*, 190 Vt. 1, 14–15, 35 A.3d 100, 109–10 (2011); *Jipac, N.V. v. Silas*, 174 Vt. 57, 61, 800 A.2d 1092, 1095–96 (2002). Vermont therefore balances the expectation that a contract will be enforced against "the strength of the policy at issue; the likelihood that a refusal to enforce would further that policy; the seriousness of any misconduct involved and the extent to which it was deliberate; and the directness of the connection between that misconduct and the term of the contract to be enforced." *Lang McLaughry*, 190 Vt. at 12, 35 A.3d at 108.

In the context of the factual background recited above, each of these factors favors non-enforcement of the 2008 Agreement between BCBS and Milnes notwithstanding Milnes's expectation of further payments under the agreement. As BISHCA's findings and Vermont statutes make clear, BCBS operates against the backdrop of Vermont's strong public policy that non-profit hospital service corporations should provide benefits at a minimum cost and under efficient and economical management. *See* Vt. Stat. Ann. tit. 8, §§ 4512(a), 4513(c) & 4584(c). As the Vermont Supreme Court has emphasized, "Blue Cross is not a private business operating freely within the competitive marketplace; it is a quasi-public business subject to the regulation of the commissioner. The primary goal of that regulation is to ensure that Blue Cross is

---

the issue in the first instance are that the issue was fully briefed and argued below, that we may decide the issue by applying questions of law to undisputed facts, and that the interests of judicial economy favor resolution rather than multiplied proceedings on remand. *See Bacolitsas v. 86th & 3rd Owner, LLC*, 702 F.3d 673, 680-81 (2d Cir. 2012). We note, moreover, that both parties encourage us to reach the defense, and Milnes has argued that we "can and should . . . determine whether the doctrine of public policy" excuses BCBS's breach. Reply Brief for Plaintiff-Appellant Milnes at 14 n.8.

'maintained and operated solely for the benefit of the subscribers thereof'" *In Re Vt. Health Serv. Corp.*, 144 Vt. 617, 624, 482 A.2d 294, 298 (1984) (quoting Vt. Stat. Ann. tit. 8, § 4512(a)).

Given the Commissioner's determination that Milnes's incentive compensation from 2001 to 2008 was based on a "flawed" system that yielded excessive compensation under Vermont law governing nonprofit hospital service corporations, holding this contract for *additional* payments under that compensation scheme unenforceable will further the public policy goal of assuring reasonably priced healthcare. Indeed, as BCBS has acknowledged in its briefing, the "hold harmless" remedy it has elected in light of BISHCA's order is something of a fig leaf: "Whether additional compensation for Milnes is funded from on-going premium revenues or reserves, it will be paid by BCBSVT's subscribers." Brief for Defendant-Appellee BCBS at 49. Enforcing the 2008 Agreement between Milnes and BCBS would only amplify the harm done by BCBS's earlier excessive payments, and thus pair the half-measure of BISHCA's "hold harmless" remedy with a full measure of additional harm to BCBS's subscribers.

While none of the Commissioner's findings suggests that either party acted deliberately in engineering the incentive compensation scheme—nor does the record on summary judgment support such an inference—we are persuaded that the payment of excessive compensation to the Chief Executive Officer of one of Vermont's quasi-public insurers was sufficiently "serious" to weigh against enforcement of the 2008 Agreement.

As to the last factor, we conclude that the connection between BCBS's excessive compensation scheme and additional payments to Milnes pursuant to that scheme is direct, and thus that the payment of additional incentive compensation to Milnes would contravene the

6

public policy that Vermont's quasi-public insurers should operate under conditions of efficient management.

Finally, we reject Milnes's principal response to BCBS's public policy defense, which is that "public policy" also favors the enforcement of contractual rights. This proves too much: if the talisman of the enforceability of contracts were sufficient to defeat all defenses to enforcement, it is hard to see how a public policy defense could ever be raised or, indeed, how we might faithfully apply Vermont's adoption of that defense. As against Milnes's proposal that public policy must invariably favor enforcement, and pursuant to Vermont's adoption of the Second Restatement's approach, we *weigh* Milnes's interest in the enforcement of the contract against the public policy interest against its enforcement. *See* Restatement (Second) of Contracts § 178(1). We therefore rest on the conclusion that, under the undisputed facts of this case and according to Vermont law, the 2008 Agreement between Milnes and BCBS is unenforceable as a matter of public policy.

We have considered the appellant's remaining arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7